CITY OF DEL CITY, a municipal corporation, Appellant,

v.

FRATERNAL ORDER OF POLICE, LODGE NO. 114; and International Association of Firefighters AFL–CIO, State of Oklahoma, Local 2171, Appellees,

and

State of Oklahoma, Intervenor.

No. 73138.

Supreme Court of Oklahoma.

Dec. 21, 1993.

Rehearing Denied March 16, 1994.

Sherry Blankenship, Ted N. Pool, Pool, Thompson, Coldiron, Blankenship & Vincent, Oklahoma City, for appellant, City of Del City.

James R. Moore, Horning, Johnson, Grove, Moore & Hulett, Oklahoma City, for appellee, International Ass'n of Firefighters.

Richard A. Mildren, Chapel, Riggs, Abney, Neal & Turpen, Oklahoma City, for appellee, Fraternal Order of Police, Lodge No. 114.

Douglas B. Allen, Asst. Atty. Gen. of Oklahoma, Oklahoma City, for intervenor, State of Okl.

Diane Pedicord, Sue Ann Nicely, Oklahoma City, for amicus curiae, Oklahoma Mun. League, Inc.

Thomas A. Woodley, Erick J. Genser, Mulholland & Hickey, Washington, DC, for amicus curiae, International Ass'n of Fire Fighters, AFL–CIO.

SUMMERS, Justice:

At issue is the constitutionality of the "Evergreen" clause as it appears in the Oklahoma Fire and Police Arbitration Act, 11 O.S.1991 § 51–105. The contested statute by its terms would continue an existing collective bargaining agreement with a city beyond its stated date of expiration, and into the future "until a new agreement is reached." The City of Del City challenges the Evergreen statute on the basis that it offends the Oklahoma Constitution, Article 10, Section 26, which prohibits municipal indebtedness from exceeding revenue provided for any year without assent of three-fifths of the voters. The Police and Firefighter's Unions defend the statute's validity. We must agree with the City. The Evergreen Clause violates our Oklahoma Constitution.

The collective bargaining agreement between Del City and the Fraternal Order of Police and International Association of Firefighters (Unions) expired before a new agreement had been reached. There is no allegation of bad faith dealing. The City filed a suit in District Court asking for a declaratory judgment as to the constitutionality of the Evergreen clause. The City alleged that a continuation of the collective bargaining agreement with respect to salaries and benefits as required by the Evergreen clause would cause a deficit in the City's budget by extending it past the constitutionally permitted one year. The City also urged that the Evergreen clause conflicted with the Municipal Budget Act. In the alternative, the City claimed that the parties had reached impasse.

The Unions urged the validity of the clause, stating (1) the collective bargaining agreement did not establish a debt within the meaning of Article 10, Section 26, and (2) that even if it did, the debt fell within the judicially-recognized exception created for legislatively-mandated obligations. The trial court held that the clause was constitutional under Section 26, that it did not conflict with the Municipal Budget Act, and that no im-

passe had been reached in bargaining. The City appealed.

The complete text of Section 51–105 is as follows:

> It shall be the obligation of the municipality, acting through its corporate authorities, to meet at reasonable times and confer in good faith with the representatives of the fire fighters or police officers within ten (10) days after receipt of written notice from said bargaining agent requesting a meeting for collective bargaining purposes. The obligation shall include the duty to cause any collective bargaining agreement resulting from negotiations to be reduced to a written agreements, the term of which shall not exceed one (1) year; provided, any such agreement shall continue from year to year and be automatically extended for one-year terms unless written notice of the request for bargaining is given by either the municipal authorities or the bargaining agent of the fire fighters or police officers at least thirty (30) days before the anniversary date of such negotiated agreement. Within ten (10) days of receipt of such notice by the other party, a conference shall be scheduled for the purposes of collective bargaining, *and until a new agreement is reached, the currently existing written agreement shall not expire and shall continue in full force and effect.* (Emphasis Added)

The emphasized final portion is what all parties refer to as the Evergreen clause and is the focus of the lawsuit.

## I. THE EVERGREEN CLAUSE AND THE "DEBT" PROHIBITION OF SECTION 26

Article 10, Section 26 of our Oklahoma Constitution provides in pertinent part as follows:

> Except as herein otherwise provided, *no* county, *city*, town, township, school district, or other political corporation, or subdivision of the state, *shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year the income and revenue provided for such year* without the assent of three-fifths of the voters.... (Emphasis Added)

The purpose behind this constitutional provision is to force cities and municipalities to operate on a cash basis, and to prevent indebtedness extending beyond one year. *Independent School District No. 1 v. Howard,* 336 P.2d 1097 (Okla.1959); *Town of Red Fork v. Gantt–Baker Co.,* 130 Okl. 175, 266 P. 444, 447 (1928). This section restricts the power of a city to incur indebtedness payable out of tax revenues beyond the year. *Fairbanks, Morse, & Co. v. City of Wagoner,* 81 F.2d 209 (10th Cir.1936). It serves not only as a restriction on the city but also on the legislature; the legislature cannot relieve the city of the burden of following the mandate of Section 26. *Protest of Carter Oil Co.,* 148 Okl. 1, 296 P. 485, 488 (1931); *Perrine v. Bonaparte,* 140 Okl. 165, 282 P. 332, 333 (1929); *St. Louis–San Francisco Ry. Co. v. Andrews,* 137 Okl. 222, 278 P. 617 (1929).

Recently, in *City of Tulsa v. Public Employees Relations Board,* 845 P.2d 872, 876 (Okla.1990), we addressed the constitutionality of a judicially-created equivalent of the Evergreen clause. There the unions urged the application of a doctrine called the "dynamic status quo." If applied the doctrine would accomplish the same result as the Evergreen clause by extending the old bargaining agreement in effect until a new agreement was reached. The continuation of the bargaining agreement would not be mandated by statute but solely by a principle created and adopted by some courts. The unions urged its application because the timing of the *City of Tulsa* case did not permit application of the Evergreen clause. We declined to adopt the doctrine, holding that the perpetuation of a collective bargaining agreement beyond one year would violate the Oklahoma Constitution, Article 10, Section 26.

Del City maintains that *City of Tulsa* is thus dispositive of today's case. It is not, except as to the issue of whether the collective bargaining agreement falls within the "debt" provision of Section 26. In *City of Tulsa,* we recognized that a municipality is required to run on a "cash basis" to maintain the integrity of Section 26. Quoting *News*

*Dispatch Printing & Audit Co. v. Bd. of County Comm'rs,* 177 Okl. 162, 57 P.2d 1156, 1158 (1936), we agreed that "[a]ny liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided."[1] In *Buxton & Skinner Stationery Co. v. Bd. of Comm'rs,* 53 Okl. 65, 155 P. 215 (1916), we held that the indebtedness, for purposes of Section 26, was created at the time the contract was made and not when the claim was presented for payment. *See also Brians v. Consolidated School Dist. No. 5,* 79 P.2d 798, 800 (Okla.1938).

 *News Dispatch,* as quoted in *City of Tulsa,* resolves the first issue raised by the Unions. Contrary to the Unions' assertion that the collective bargaining agreement does not fall within the "debt" provision of Section 26, we hold that the bargaining agreement is an obligation incurred by Del City to pay the police and fire fighters a specific wage and certain benefits. The Unions urge that the contract was merely a fee schedule. We disagree. If the wages and benefits owed were not an obligation of Del City, the collective bargaining agreement would have lost its force and effect, which is to secure these wages and benefits for police and fire fighters. If it were not an obligatory debt, Del City would not be required to pay the contractual amount, but could pay some lesser amount. *See Faught v. City of Sapulpa,* 145 Okl. 164, 292 P. 15 (1930) (a debt under Section 26 exists when a contractual obligation is created). The Unions' argument is unpersuasive.

## II. THE EVERGREEN CLAUSE AND THE ONE YEAR LIMITATION IN SECTION 26

The second argument raised by the Unions was left unsettled by *City of Tulsa,* and that is whether the Evergreen clause can avoid a constitutional collision due to the fact the debt was legislatively imposed rather than voluntarily incurred. We must agree with them that Section 51–105 is a legislatively-enacted obligation imposed on municipalities.

However, that fact alone does not resolve the controversy. Although this Court has on occasion stated that a legislatively-imposed obligation is not subject to Section 26, the history of this exception—and especially this Court's discussion of the exception in later opinions—is of particular concern in coming to our decision. We have shown a great reluctance to allow the legislature to override the plain meaning of the words of Section 26. We must determine whether this legislatively-imposed obligation fits within those narrow limits of the exception.

### A. THE *SMARTT* DECISION

The exception for the "legislatively-imposed obligation" to Section 26 was created in *Smartt v. Bd. of County Comm'rs,* 67 Okl. 141, 169 P. 1101 (1917). There, a sheriff filed suit to recover money paid for the boarding of prisoners. The fund allotted for this purpose had been exhausted. The county refused to pay for these expenses because of Section 26's prohibition against indebtedness beyond one year.

Noting that the sheriff in *Smartt* had a constitutional duty to feed the prisoners, the Court stated that the very purpose of creating a state government was to delegate the performance of certain functions dealing with the common safety and welfare. *Id.* 169 P. at 1102. "The surest way to bring about [a failure of the government] is to construe the Constitution in such a way as to place in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other." *Id.* The Court declined to a adopt a literal interpretation of Section 26, opting instead to create an exception to the Section 26 mandate. Relying on sister states' interpretations of similar state constitutional provisions, the Court held that liabilities not

1. See also *Independent School District v. Howard,* 336 P.2d 1097 (Okla.1959); *Consolidated School Dist. No. 6 v. Panther Oil & Grease Mfg. Co.,* 197 Okl. 66, 168 P.2d 613 (1946); *Herd Equipment Co. v. Township of Eagle,* 180 Okl. 172, 68 P.2d 420 (1937); *Cobb v. City of Norman,* 179 Okl. 126, 64 P.2d 901 (1937); *Board of County Comm'rs v. Morningside Hosp. & Training School for Nurses,* 175 Okl. 242, 51 P.2d 928 (1936).

voluntarily incurred but imposed by a valid act of the legislature fall outside the mandate of Section 26.

## B. CASE LAW PRIOR TO *SMARTT*

Prior to *Smartt*, our Court had repeatedly rejected any attempt to circumvent the mandates of Section 26, regardless of the hardship caused. In *Campbell v. State ex. rel Brett*, 23 Okl. 109, 99 P. 778 (1909), we held a ten-year lease for a courthouse invalid under Section 26. Relying on the rulings of other states which had similar state constitutional provisions, we stated that "[w]henever a debt is to cover a period of years, it is never to be valid except when approved by a vote of the electors of the particular subdivision of the state directly involved." *Id.* at 785.

Three years later, in *Kerr v. State ex rel. Wimbish*, 124 P. 284 (Okla.1912), and *State ex rel. Decker v. Stanfield*, 34 Okl. 524, 126 P. 239 (Okla.1912), we reached similar conclusions. In *Kerr*, the County Attorney brought a mandamus action seeking to force the County Clerk to issue warrants which had been approved by the Board of Commissioners. Relying on a statute and the Oklahoma Constitution, Art. 10, Section 26, the County Clerk refused to issue the warrants because of lack of funds. The Court held that Section 26 was a limitation upon the people, acting primarily through the legislature, from allowing expenditures to exceed the yearly revenues. The Court ordered that the mandamus action be dismissed.

In *Stanfield*, suit was brought to force the district judge to hold a term of court. The district judge refused because the court fund had been exhausted. This Court again stood by the clear and unambiguous meaning of the words of Section 26, and held that those cases which would require the expenditure of court funds could not be tried. The Court pointed out that the judge was paid his salary from a fund other than the court fund, and that the "salary" fund had not been exhausted. Thus, cases which required only a judge

but did not require a jury could be tried. However, those requiring a jury, whose payment for services would be made from the exhausted court fund, must be tried later. This was the holding in spite of the constitutional requirement that the "courts of justice ... shall be open to every person...." Okla. Const. Art. 2, Section 6. The Court construed the two constitutional provisions together to give both effect. The opinion of the Court was that to hold otherwise would dilute Section 26, and that the responsibility lay with the legislature to insure that adequate funds were present to meet the demands of the court system. *Id.* 126 P. at 241.

In *Stanfield*, it was also argued that Section 26 had no application to those expenses which were imposed by law, but applied only to "those voluntarily contracted by the municipalities...." *Id.* The Court emphatically disagreed:

> To hold that, notwithstanding this provision, the county can become indebted in excess of the revenue provided, for any obligation imposed upon it by the Legislature, is to hold that this provision is not binding upon the Legislature ... *The provision is against the county being allowed to become indebted, and, the provision being in the Constitution, it seems to us, is binding upon all inferior agencies, and therefore prevents the Legislature from allowing the county to become indebted, as well as the county's own officers.* (Emphasis added)

*Id.* at 241.

Likewise, the United States Supreme Court reached similar results when construing the similar constitutional provisions of two other states. In *Buchanan v. Litchfield*, 102 U.S. 278, 26 L.Ed. 138 (1880), the Court held with regard to an Illinois constitutional provision [2]:

> The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal

**2.** The Illinois Constitution, Art. 9, Section 12, provides "no county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing

indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

indebtedness. The purpose of its framers, beyond all question, was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount ... No legislation could confer upon a municipal corporation authority to contract indebtedness which the Constitution expressly declared it should not be allowed to incur.

*Id.* at 287–88.

In *Doon Township v. Cummins*, 142 U.S. 366, 12 S.Ct. 220, 35 L.Ed. 1044 (1892), the Court addressed the similar Iowa state constitutional provision.[3] Again, the Court agreed that this state constitutional provision was a limit on the power of the legislature. Any statute which attempts to authorize debts beyond this state constitutional limit was unconstitutional. *Id.* at 371, 12 S.Ct. at 221.

### C. CASE LAW AFTER *SMARTT*

After the *Smartt* decision, a multitude of cases arose in which the exception was asserted as a way to validate an otherwise unconstitutional debt. The exception met with a great deal of criticism, caused considerable confusion, and has been narrowly construed to avoid allowing the exception to swallow the constitutional rule:

> This court has recognized, but one exception to that rule [Section 26], and that was announced in the 'feeding prisoners' decision. Smart[t] [citation omitted]. That doctrine has been approved in one case (*Hume v. Wyand et al.*, [68 Okl. 261, 173 P. 813 (1918) ], [citation omitted] ) and has been followed in one case (*Anderson v. Board of Commissioners* [134 Okl. 299, 273 P. 222 (1928) ] [citation omitted], but *it has been criticized by this court in many decisions, and the doctrine has never been extended.*
>
> In the absence of an election and the assent of the requisite percentage of voters, *the only legal indebtedness that may be incurred by a political subdivision of*

the state, in any year, in an amount exceeding, in that year, the income and revenue provided for that year, is one incurred under the circumstances stated in Smart[t].

*Faught v. City of Sapulpa*, 145 Okl. 164, 292 P. 15, 29 (1930). See also *Protest of Kansas City So. Ry. Co.*, 157 Okl. 246, 11 P.2d 500, 508 (1932). Its validity has been questioned in light of this Court's other decisions and the decisions of the U.S. Supreme Court in *Doon Township* and *Buchanan*: "[*Smartt* ] is in direct conflict with the settled definition given to those identical words by the Supreme Court of the United States in *Litchfield v. Ballou* [114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132], [ (1885) ], and *Doon Twp. v. Cummins, supra*, and the reasoning therein is too void of strength to constitute a binding analogy to the proposition here presented." *Eaton v. St. Louis–San Francisco Ry. Co.*, 122 Okl. 143, 251 P. 1032, 1037 (1925).

In *Protest of Kansas City So. Ry. Co.*, 157 Okl. 246, 11 P.2d 500 (1932), the first debt at issue was one which arose out of a contract between the city and a private party for the construction of a bridge. At the time the contract was made, the city had adequate funds earmarked for the bridge. However, by the time the bridge was built the funds had been exhausted. A judgment was obtained against the city. Several important principles were set forth in this case. First, this Court held that the merging of an invalid claim into a judgment does not validate the claim. Thus, even though a judgment is an involuntary obligation, the judgment does not necessary fall outside the limitations of Section 26. *Id.* 11 P.2d at 506. Secondly, in spite of the broad language used in *Smartt*, the Section 26 limitations are binding not only on the municipality but also on the legislature:

> The limitations contained in section 26, article 10, supra, are, not only against the county, but against the Legislature, and the Legislature is as much without authority to enact a statute imposing a liability on the county in violation of the provisions of

---

**3.** The Iowa Constitution provided "no county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation." Iowa Const. Art. 11, Section 3.

section 26, article 10, supra, as the county has to assume an obligation in violation of the provisions of that section.

*Id.* at 507.

Also at issue were debts incurred by the city for the fees and expenses of the sheriff, the heating of the courthouse and an election. The Court held that "constitutional governmental functions" are not subject to Section 26 limitations. These constitutional obligations must be met before any payments are made for legislatively-imposed obligations. *Id.* at 509. If funds are exhausted before all constitutional governmental functions have been paid, "then and then only does the rule stated in the *Smartt* case apply...." *Id.* at 510.[4]

As for the sheriff's expenses, the court looked at each expense separately. Relying on *Smartt,* the Court held that the feeding of prisoners and heating of the county jail were constitutionally-imposed obligations. However, the other expenses—including the sheriff's salary—were imposed by legislative enactment and not the constitution. Thus, the Section 26 prohibitions applied. *Id.* at 510. As for the election, the Court held that the claim was dependent on the type of election. If it was one required by the Constitution, it was excepted from Section 26. If not, Section 26 applied. *Id.* at 510.

■ *Eaton v. St. Louis–San Francisco Ry. Co., supra,* further clarified *Smartt* in the context of a judgment rendered against a city. A city levied taxes to make payments on bonds which were issued in response to a judgment rendered against the city. The bonds issues were in excess of the Section 26 limit. The Court declined to adopt a distinction which relied on the voluntary or compulsory nature of the obligation. The Court found that regardless of whether the debt was compulsory, Section 26 would control. Such a distinction would only obscure the

plain meaning of the words of the Oklahoma Constitution. *Id.* 251 P. at 1036. Instead, the Court again stated that the constitutional governmental obligations must be paid first and the remaining funds could be allotted to other obligations. *Id.* at 1037.[5]

■ Although many of the cases decided after *Smartt* seem at odds with each other, we perceive a thread of consistency. Most of the decisions fall into two categories: (1) those obligations imposed upon the municipality by either the Federal or Oklahoma Constitution, and (2) those obligations which are mandated not by the Constitution, but are imposed either by the legislature or by a voluntary contract entered into between the parties. Those obligations which fall under the first category are not limited or prohibited by Section 26. Those which fall into the second category are controlled by Section 26 and are thus unconstitutional. (We acknowledge the existence of cases which do not clearly line up this way, and deal with them accordingly.)

Those cases in which the obligation imposed on the municipality was of a constitutional nature have been held to fall within the *Smartt* exception. Cases dealing with tax assessments are a good example of a debt assessed against a city which is not always subject to Section 26. In *City of Claremore v. Okla. Tax Comm'n,* 197 Okl. 223, 169 P.2d 299, 303 (1946), we upheld a sales tax assessment against the city for the sales of electric and water service. The city objected to the assessment, asserting the limits of Section 26. In *Wilson v. City of Hollis,* 193 Okl. 241, 142 P.2d 633, 639 (1943), we upheld assessments against property for improvements made by the City. In both cases, the essential question was whether the state or city had the power to levy a tax. Clearly, the Oklahoma Constitution gives the legislature the power to levy taxes. Okla. Const. Art.

4. *See also Protest of Cities Serv. Gas Co.,* 162 Okl. 131, 19 P.2d 546, 548 (1933) (the city must make a supplemental appropriation—from funds allocated to other purposes if necessary—to fund constitutional governmental functions and only when there are no remaining funds may the *Smartt* exception be applied).

5. These holdings are important because they clarify the question of whether *Smartt* intended to permit the validation of all debts which were "involuntary." The court clearly answers in the negative. The voluntary nature of the obligation is only one factor in the analysis of whether the debt is constitutional. Even though a judgment is involuntary, that does not exempt it from the Section 26 limitation.

10, Sections 2–20. In these two cases, the legislature had enacted laws to carry out the constitutional duty of levying taxes. Thus, the tax assessments were obligations outside the scope of Section 26. *See also Board of Education v. City of Chickasha*, 195 Okl. 127, 155 P.2d 723 (1945); *City of Perry v. Johnson*, 106 Okl. 32, 233 P. 679 (1925).[6]

In three other cases, we held that the duty imposed was one arising from the constitution and thus outside the restrictions of Section 26. In *LeFlore County Excise Bd. v. St. Louis–San Francisco Ry. Co.*, 93 P.2d 1087 (Okla.1939), judgments were taken to pay the salary of the sheriff as well as fees and expenses which arose out of his duties. We held that the duties of transporting prisoners and serving process imposed upon the sheriff arose out of the Constitution, and that he could not lawfully have refused to perform them. Thus, the *Smartt* rule applied and those debts were exempt from Section 26. However, the expenses incurred by way of telephone service to the sheriff's office were not within the *Smartt* exception. Telephone service for the sheriff was not an expense required to fulfill a constitutional obligation.

*Board of Comm'rs v. Lawrence*, 182 Okl. 485, 78 P.2d 669 (1938), presented the question of whether the unpaid salary to a county judge was an obligation for a "constitutional governmental function" and therefore exempted from Section 26. Because the county judge was an officer required by the Constitution, Section 26 did not apply. Again the Court reiterated that obligations arising from constitutional governmental functions must be paid first. All other obligations are secondary and are paid from the remaining funds. *Id.* 78 P.2d at 671.

We again relied on the *Smartt* exception in *Hillcrest Med. Center v. State ex rel. Dept. of Corrections*, 675 P.2d 432 (Okla.1983). The hospital brought suit against the county for the recovery of medical costs of treating a patient. The patient, a prisoner in the custody of the Department of Corrections, was injured in an automobile accident while in transport from a court hearing to the prison. The county asserted that Section 26 prohibited the payment of the hospital bills. We held that certain "constitutional governmental functions" were excepted from Section 26, and as such, these hospital bills were not subject to the Section 26 prohibition.

Having examined the cases in which Section 26 has been held inapplicable, we now turn to those cases which deal with obligations not of a constitutional nature. The first group of such cases deals with payment obligations to service providers. In *Board of Comm'rs v. Summers*, 181 Okl. 312, 73 P.2d 409 (1937), county physicians who served on the insanity board for the county sought payment for services rendered throughout the year. The appropriation made was insufficient. The Court held that the services performed were not a "constitutional governmental function," and disallowed payment. *Id.* 73 P.2d at 410.

Likewise, in *Board of County Comm'r v. Alexander*, 171 Okl. 288, 42 P.2d 884 (1935), we held that services provided by a physician for medical care rendered to the poor and to prisoners were not exempted from Section 26. The court again based this holding on the distinction between legislative acts and constitutional governmental functions. *Id.* 42 P.2d at 886. Because the physician's employment was held based on a statute rather than a constitutionally imposed obligation, the payment for services was regulated by Section 26 requirements.

The "constitutional governmental function" distinction has also been the basis for denying payment for the services of a county superintendent, a teacher, and a lawyer.[7] It

---

6. We do not mean to imply that the legislature is without boundaries in assessing taxes against a city or municipality. The Constitution sets many limits on the taxing power of the legislature. *See, e.g.,* Okla. Const. Art. 10, Sections 6 and 6A.

7. *Board of Comm'rs v. Robinson*, 140 Okl. 142, 282 P. 299 (1929) (county superintendent denied payment for salary because his salary did not fall within the *Smartt* exception); *Brians v. Consoli-*

dated School Dist. #5, 183 Okl. 29, 79 P.2d 798 (1938) (teacher's salary is subject to Section 26 and thus her contract was void because the contract was executed before the appropriation was made); *Board of Educ. v. McAchran*, 133 Okl. 175, 271 P. 843 (1928) (teacher's contract was void because the contract went against the following year's revenues and thus violated Section 26); *Board of Educ. v. Jacobs*, 134 Okl. 101, 272

has also been the basis of decisions which denied the pay increases sought by police officers and firemen.[8] While we have not overruled the *Smartt* case, we have continued to closely scrutinize any claim which attempts to gain protection from the exception. As stated in *Board of Educ. v. Jacobs,* 134 Okl. 101, 272 P. 360, 362 (1928), the *Smartt* opinion "appears to be in the very teeth of the provisions of the Constitution, although it may be justified by reason of the surrounding circumstances...."

We have declined to extend *Smartt* to cases in which material and services are provided to a city or municipality. In *Town of Red Fork v. Gantt–Baker Co.,* 130 Okl. 175, 266 P. 444 (1928), we refused to permit a violation of Section 26 in order to pay for the materials and services provided by engineers in the construction of a waterworks system. *See also Flood v. Town of Shidler,* 127 Okl. 148, 260 P. 52 (1927); *McVicker v. Bd. of County Comm'rs,* 442 P.2d 297 (Okla.1968); *Columbia Ins. Co. v. Bd. of Educ.,* 185 Okl. 292, 91 P.2d 736 (1939). In *Boardman Co. v. Bd. of County Comm'rs,* 136 Okl. 85, 276 P. 474 (1929), we refused to permit the payment for the construction of bridges, stating that regardless of the language of a statute permitting the construction of bridges, a statute attempting to overstep the boundaries of Section 26 would be unconstitutional. *Id.* 276 P. at 480.

After appropriations were exhausted, Section 26 has also been held to prohibit payment for the heating of the courthouse, materials used in the construction of a sewer system, and electricity used to light the city streets.[9] It has been held to prohibit the payment of debts arising out of supplies furnished to a school district.[10] For example, in *Protest of Carter Oil Co.,* 148 Okl. 1, 296 P. 485 (1931), the city made no appropriation for school busses. The supplier of the busses obtained a judgment against the city and the city then appropriated funds the following year to pay the supplier's judgment. Although there was a legislative enactment which required the providing for transportation of school children to school, and there is a constitutional provision requiring a public school system, school busses in 1931 were not within the *Smartt* exception for constitutional governmental functions:

> It is contended by the protestee that the transportation of school children, as provided by the act of the Legislature, is not within the provisions of Section 26, article 10, of the Constitution, but after a long lime of decisions of this court to the contrary in effect, we decline to so hold. *The indebtedness sought to be incurred was in no wise involuntary under the provisions of the Constitution. While it may have been involuntary under the act of the Legislature, we find nothing in the Constitution that in any way requires officers of a school district to transport the school children,* and being a legislative requirement, it cannot be construed as imposing an involuntary liability in conflict with the limitations of the Constitution.

---

P. 360 (1928) (attorney's fees for the preparation of a bond issue were denied because the services did not fall within the narrow exception of *Smartt* ).

8. *Baylis v. City of Tulsa,* 780 P.2d 686 (Okla. 1989) (police officer's five percent pay raise was violative of Section 26 as it did not fall with the "constitutional governmental function" exception of Section 26); *Jurd v. City of Tulsa,* 183 Okl. 239, 80 P.2d 596 (1938) (Section 26 prohibited the recovery of salary by a fireman because the appropriation had been exhausted and the salary did not fall within the *Smartt* exception).

9. *Excise Bd. v. Kansas City So. Ry. Co.,* 173 Okl. 238, 47 P.2d 580 (1935) (the gas furnished to heat the courthouse was not within the exception created in *Smartt* ); *Public Service Co. v. City of*

*Tulsa,* 174 Okl. 58, 50 P.2d 166 (1935) (Section 26 requires a pay as you go system for not only the necessities of government but also the other expenses incurred); *Covington v. Antrim Lumber Co.,* 123 Okl. 129, 252 P. 50 (1927) (the contract for the payment of material used to construct a sewer was funded by the city at the time it was executed and a subsequent diversion of the funds did not make the contract invalid); *Gentis v. Hunt,* 121 Okl. 71, 247 P. 358 (1926).

10. *Independent School District No 1 v. Howard,* 336 P.2d 1097 (Okla.1959) (contract for the supply of typewriters to a school violated Section 26); *Stanolind Pipe Line Co. v. Tulsa County Excise Board,* 183 Okl. 160, 80 P.2d 316 (1938) (tax levies for the school district were not permitted because they exceeded the amount permitted by Section 26).

Two thousand years ago, when the prophet John had come down out of the wilderness and was preaching and baptizing, certain of those in the multitude gathered about him who were tax gatherers or publicans, and he said to them, "Exact no more than that which is appointed you." The same thought is expressed in the Constitution of the state of Oklahoma wherein the people spoke and said that no school district shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year....

*Carter Oil* 296 P. at 488–89.

We find two cases that do not fall clearly within either of these two categories. In *Bd. of County Comm'rs v. Okla. Public Employees Retirement System*, 405 P.2d 68 (Okla. 1965), this Court upheld the statute which created the pension system for state and county employees. Lincoln County opted into the retirement system, and then attempted to withdraw stating that there was no appropriation in the budget for the employer's contribution to the pension plan. We held that the obligation was a mandatory one under the legislative enactment, and not controlled by Section 26.

In *Bd. of County Comm'rs v. Mullins*, 202 Okl. 628, 217 P.2d 835 (1950), this Court upheld a five-year lease for the land upon which the fair was county fair was held. Holding that the contract was one which was required by law, Section 26 was determined inapplicable because it does "not apply to those liabilities which are not voluntarily incurred, but are imposed upon the municipality by the sovereign power, as expressed in the Constitution and the valid acts of the Legislature." *Id.* 217 P.2d at 842 *quoting Hume v. Wyand*, 68 Okl. 261, 173 P. 813 (1918).

■ These two cases are the only ones which would support the Unions' argument in favor of the Evergreen provision. In *Lincoln County* and *Mullins*, this Court said the legislature may require a municipality to comply with a legislative act and thereby create a valid liability on the part of a municipality. But we believe a county or municipality must fund all of its obligations, except

those of a constitutional governmental nature, by conforming to the constitutional requirements of Section 26. A legislative act cannot trump a constitutional provision and create a municipal liability that necessarily requires unconstitutional funding practices. We need not revisit all of the language in *Lincoln County* and *Mullins*, and we decline to disturb those opinions in any respect due to the settled property and contractual rights based thereon. *Oklahoma Preferred Finance & Ln. Corp v. Morrow*, 497 P.2d 221, 223–24 (Okla.1972); *Oklahoma County v. Queen City Lodge No. 197*, 195 Okl. 131, 156 P.2d 340, 345 (1945); *Webb v. Semans*, 110 Okl. 72, 235 P. 1074 (1925) However, we refuse to extend them to cover the factual situation at bar.

■ Upon review of all our prior decisions we hold the Evergreen statute to be unconstitutional, as it requires municipalities to perpetuate contracts beyond the constitutionally-permitted one year. It hinders the city from operating as the constitutional clause intended—on a pay as you go basis. It makes the task of budgeting expenditures to match income impossible. There is no way for a municipality to know how long the collective bargaining agreement will continue, and how much money must be budgeted to cover the expense.

We recognize the exception created in *Smartt*, but we continue to construe it narrowly. Our broad sentiments are those expressed in *Boardman*, supra:

> [T]here can be found in our Constitution no provision couched in clearer or more comprehensive terms than this section.... [Its] one purpose was to safeguard the citizens and taxpayers of the state against the inadvertence, carelessness, the profligacy and the corruption of public officials charged with the handling of public monies. That provision is subject to no exigency, pays no heed to convenience, expediency, or emergency.

We recognize the policy reasons for legislatively including the Evergreen clause in the Fire Fighters and Police Arbitration Act. Regardless of the merit of these policies, we

cannot ignore the direct command of Article 10, Section 26.

Our duty is clear, and we have no choice. The plain provision of the Constitution must be obeyed and followed, not only by the courts, but by everyone; and it is the solemn duty of this court, when its jurisdiction is properly invoked, to maintain and not destroy or impair the wise provisions of this sacred document. It is better that the courts preserve the organic law and protect the rights of all the people at the expense and hardship of a few rather than to relieve the few of this expense and hardship, and in so doing destroy the Constitution and jeopardize the rights of all the people. *Faught*, 292 P. at 28.

The order of the District Court is reversed. The cause is remanded with instructions to enter judgment on the petition of plaintiff/appellant in a manner consistent with this opinion.

LAVENDER, V.C.J., and SIMMS, ALMA WILSON and WATT, JJ., concur.

OPALA and KAUGER, JJ., concur in part, dissent in part.

HODGES, C.J., and HARGRAVE, J., dissent.