2002 OK CIV APP 109

Kathy A. FIELDS, Plaintiff/Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, Oklahoma, a/k/a Tulsa Public Schools, Defendant/Appellant.

No. 96,782.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 4, 2002.

J. Douglas Mann, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, OK, for Defendant/Appellant.

Maynard I. Ungerman, Joshua L. Schwartz, Law Offices of Maynard I. Ungerman, Tulsa, OK, for Plaintiff/Appellee.

Opinion by BAY MITCHELL, Judge:

¶1 Appellant Independent School District No. 1 of Tulsa County, Oklahoma ("School District") appeals the District Court of Tulsa County's decision to reinstate Appellee Kathy A. Fields ("Fields"), a career teacher, to employment with the Tulsa School District. Given the great deference with which we review the trial court's findings of fact, as well as the absence of any legal error herein, we are constrained to affirm the trial court's decision to reinstate Fields. After *de novo* review of the jurisdictional question involved in Fields's attorney fee award, we reverse.

### Factual and Procedural Background

¶2 Fields is a career teacher[1] with Tulsa Public Schools who has taught social studies at Central High School since 1993. Dr. Nilda Reyes became principal of Central High School in January, 2000. Prior to 2000, Fields, on her annual evaluations, received ratings of "commendable" (the highest rating possible) in all twenty-nine areas of performance, with the exception of the 1996–97 and 1997–98 school years, when Fields received a "needs to improve" rating in one particular area: timely arrival and departure from school.

---

1. " 'Career teacher' means a teacher who has completed three (3) or more consecutive complete school years in such capacity in one school district under a written teaching contract." 70 O.S.2001 § 6–101.3.

¶ 3 Fields underwent her first annual review with Dr. Reyes on April 27, 2000. Dr. Reyes, along with assistant principal Jean Keeton, had observed Fields's classroom several times prior to that date. On that evaluation, Fields received twelve "satisfactory" ratings and seventeen "needs to improve" ratings. She did not receive a single "commendable" mark. Dr. Reyes noted the following problems with Fields's performance: Fields remained at her desk and did not walk around the room while teaching; there was an overall lack of structure; students talked and slept during class; on one occasion students watched an episode of the "Sally Jesse Raphael" television show during class; and Fields spoke to the students as if they were children. Written at the bottom of the evaluation form is Dr. Reyes's recommendation that Fields attend an ITI or discipline workshop during the summer. Dr. Reyes did not recommend a plan of improvement for Fields at that time.

¶ 4 Fields did not attend any workshops over the summer as suggested.

¶ 5 On November 13, 2000, during the new school year, Dr. Reyes again reviewed Fields's performance. This time, she rated Fields "satisfactory" in twelve categories, "needs to improve" in fourteen, and "unsatisfactory" in three: preparation, routine, and lesson plans. In addition to repeating some of the complaints from her April 2000 review (students talking in class, lack of structure), Dr. Reyes noted in the November evaluation that Fields's classroom was dirty and that Fields had failed to turn in either her syllabi or her attendance records despite several requests. Dr. Reyes recommended the formation of an assistance committee to help Fields, and noted that Fields had not followed Dr. Reyes's April, 2000 recommendation that Fields attend a classroom discipline workshop. The November 2000 evaluation was based on three observations of Fields's classroom: one by Dr. Reyes, one by assistant principal Keeton, and one by assistant principal Battles.

¶ 6 The day after the November evaluation, Dr. Reyes issued a Job Targets Report to Fields. A Job Targets Report is a written document designed to advise teachers of the deficiencies in their performance, to specify the improvement required and the assistance to be provided, and to establish a target date for improved performance. The following instructions appear on the face of the Job Targets Report:

> Any "Unsatisfactory" rating on the TEACHER'S CONFIDENTIAL EVALUATION requires that the principal complete a JOB TARGETS REPORT specifying what the teacher must do to overcome the indicated deficiency. For a "Needs to Improve" rating, the JOB TARGETS REPORT is optional unless requested by the teacher. The JOB TARGETS REPORT may also be used alone to point out a single area of unsatisfactory performance and give instructions for correcting the problem. Job targets are to be stated in brief, specific terms such as the following: "To increase students' interest and improve classroom control by (a) carefully outlining all activities one week in advance, (b) dividing each class period into two or more activities, and (c) supplementing the textbook with filmstrips, games, recordings and other media as suggested by the curriculum supervisor."

¶ 7 The Job Targets Report issued to Fields on November 14, 2000, stated Fields's job targets in the following terms:

> Your evaluation dated November 13, 2000, has the following Need to Improve:
>
> # 3, # 4 (discipline, learning environment)
>
> # 8, # 9, # 10, # 11 (objectives, sequence)
>
> # 14, # 15, # 16, # 17, # 18 (models, monitors, adjusts, guides, provides)
>
> # 27, # 28, # 29 (interpersonal skills)
>
> Your evaluation dated November 13, 2000, has the following unsatisfactory:
>
> # 1, # 2, # 5 (preparation, routine, lesson plans)
>
> Need a syllabus for the 1st semester by November 17, 2000, this was due Labor Day weekend. Need the 2nd semester syllabus by January 2, 2001. Refer to faculty meeting for syllabus component.
>
> I am also requesting that an assistance team meet with Kathy Fields no later than December 1, 2000, to establish guidance,

structure, and recommendations for Kathy Fields.

You have been with Tulsa Public Schools since November 9, 1990. Improvement should be noted immediately.

¶ 8 The Assistance Team consisted of Principal Reyes; Assistant Principal Keeton; Juanita Williams, a Social Studies Coordinator for the Tulsa School District; Linda Woods, a teacher from Central High (whom Fields appointed to the team); and Jennifer Howland, another teacher from Central High. The Assistance Team met with Fields on November 29, 2000, and gave Fields a written list specifying the following required areas of improvement:

Organization/Classroom Management:
Preparation
Routine
Discipline
Instructional Effectiveness
Establish objectives
Sequence
Involve all learners
Model/mentor/adjust/guide
Professional Growth and Responsibility
Professional Development
Interpersonal skills
Interact in a positive and professional manner

¶ 9 The Assistance Team members made suggestions to Fields and provided her with materials they thought might be useful. They also helped Fields organize and clean her classroom. The members met with Fields again on January 18, 2001, to inform her of their observations and the deficiencies in her job performance. Fields reportedly was resistant and uncooperative during this meeting.

¶ 10 On January 31, 2001, Dr. Reyes met with Fields and gave her a memorandum to indicate closure of the Job Targets Report period and the dissolution of the Assistance Team. Dr. Reyes concluded that Fields had failed to meet any of the objectives of the Job Targets Report.

¶ 11 Fields's final evaluation on March 21, 2001, reflected no improvements from the November evaluation. Dr. Reyes did not recommend a new Job Targets Report at that time, believing it would be futile. Instead, Dr. Reyes recommended that Fields's contract be terminated.

¶ 12 Dr. David Sawyer, the Superintendent of Tulsa School District, submitted a written recommendation to the Board of Education that Fields be "nonreemployed"[2] for the 2001–2002 school year on the following statutory grounds: (1) willful neglect of duty, (2) incompetency, (3) repeated negligence in performance of duty, (4) instructional ineffectiveness, and (5) unsatisfactory teaching performance. After a due process hearing, the school board decided to "nonreemploy" Fields on the grounds of willful neglect of duty, repeated negligence in the performance of duty, instructional ineffectiveness, and unsatisfactory teaching performance. The board concluded that the evidence was insufficient to establish the fifth asserted ground, incompetency. Fields timely filed a request for a district court trial *de novo* pursuant to Section 6–101.26 of the Teacher Due Process Act of 1990, 70 O.S.2001 § 6–101.20, *et seq.*

¶ 13 The trial court found that School District failed to prove by a preponderance of the evidence that it adequately complied with the requirements of the admonishment statute, 70 O.S.2001 § 6–101.24. The court reasoned that because School District's written instructions regarding the ways in which Fields needed to improve lacked specificity, and the assistance Fields received to help her improve her teaching methods was insufficient, the purpose of the admonishment statute was not met.

¶ 14 In addition to finding that School District failed to satisfy the procedural prerequisites to Fields's "nonreemployment", the trial court also concluded that the evidence presented at the trial *de novo* was insufficient to establish negligence in performance of duty,

---

**2.** " 'Nonreemployment' means the nonrenewal of an administrator's or teacher's contract upon expiration of the contract" whereas " '[d]ismissal' means the discontinuance of the teaching service of an administrator or teacher during the term of a written contract." 70 O.S.2001 § 6–101.3.

willful neglect of duty, incompetency, instructional ineffectiveness, or unsatisfactory teaching performance. The court found that there was no evidence to show that Fields was, in fact, expected to attend workshops over the summer of 2000 or that her continued employment in any way hinged on such attendance. In addition, the court determined that Fields was not advised that her syllabi for the spring semester of 2001 were insufficient until *after* Dr. Reyes decided to recommend Fields for "nonreemployment". The court further found many of the complaints about Fields's perceived failings, if communicated to Fields at all, were never made in writing as required by 70 O.S.2001 § 6–101.24, and were rarely contemporaneous with her alleged misconduct. Accordingly, based on the evidence introduced on behalf of Fields, especially the testimony of her former students as to her teaching skills, the trial court found that School District failed to prove by a preponderance of the evidence that Fields was guilty of willful neglect of duty, repeated negligence in performance of duty, incompetency, instructional ineffectiveness. or unsatisfactory teaching performance. The trial court thus reversed the school board's decision to "nonreemploy" Fields and ordered Fields's reinstatement with full employment status and benefits. Thereafter, the trial court awarded Fields $10,809.57 in prevailing party attorney fees and costs pursuant to 70 O.S.2001 § 6–101.27(D). This appeal by the Tulsa School District followed.

## I.

■ ¶ 15 "Because the Teachers Due Process Act statutorily modifies the common law at-will employment doctrine, we review the findings of fact of the trial court as if it were a law action tried to the court and give those findings of fact the same great deference we give those rendered by a jury." *Andrews v. Independent Sch. Dist. No. 57,* 2000 OK CIV APP 103, ¶ 3, 12 P.3d 491, 493. The trial court's judgment in such matters "will not be disturbed on appeal in the absence of legal errors, if there is any competent evidence reasonably tending to support the trial court's conclusion." *Hawzipta v. Independent Sch. Dist. No. I–004 of Noble County,* 2000 OK CIV APP 113, ¶ 10, 13 P.3d

98, 100–01. "We do not reweigh the trial court's findings of evidentiary matters. . . . Even though the evidence may conflict, the appellate court is bound by the fact finder's assessment of it, absent legal error. A verdict which is supported by conflicting but competent evidence will not be disturbed on appeal." *Id.,* citing *Mitchell v. Ford Motor Credit Co.,* 1984 OK 18, 688 P.2d 42.

■ ¶ 16 Subsection 6–101.24(D) of the Teacher Due Process Act provides that a school administrator who identifies the sort of poor performance on the part of a career teacher that may lead to a termination recommendation shall "[a]dmonish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct" as well as "[e]stablish a reasonable time for improvement, not to exceed two (2) months, taking into consideration the nature and gravity of the teacher's performance or conduct." 70 O.S.2001 § 6–101.24(A). "The purposes of the admonishment statute are to prevent arbitrary and unreasonable teacher evaluations by principals and to provide assistance for teachers with remedia[ble] classroom problems." *Jackson v. Independent Sch. Dist. No. 16 of Payne County, Okla.,* 1982 OK 74, ¶ 4, 648 P.2d 26, 29.

■ ¶ 17 Mere technical violations of the admonishment statute do not necessarily result in a denial of due process, however. For example, in *House v. Independent Sch. Dist. No. 1–29 of Muskogee County,* 1997 OK 35, 939 P.2d 1127, the Supreme Court rejected a teacher's claim that the principal's failure to indicate a reasonable time for improvement in the written admonishment rendered it invalid and resulted in a denial of due process where the teacher was in fact given more time in which to improve than the two-month statutory maximum. *Id.,* ¶¶ 13–14, 939 P.2d at 1130–31.

■ ¶ 18 Although we agree that, on its face, the Job Targets Report issued to Fields on November 14, 2000 lacks the sort of specificity required by the form's own written instructions, the admonishment statute merely requires that the administrator "[a]d-

monish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct"; it does not dictate how specific the admonishment must be. Furthermore, all Fields needed to do to discover the more precise nature of the observed problems with her teaching performance was to cross-reference the numbers on the Job Targets Report with the entries on her evaluation form.[3] It is frankly difficult to see how the Job Targets Report is not specific enough to put Fields on sufficient notice of the nature of her perceived deficiencies so that she might strive to correct them.

¶ 19 Even if we were to hold that the trial court erred in concluding that School District violated the admonishment statute by not being specific enough in its criticism of Fields's performance, such error would be harmless, because in addition to the due process violation, the court also found insufficient evidence to satisfy any of the asserted statutory grounds for Fields's "nonreemployment". Given the great deference with which we review the trial court's findings of fact in such matters, and given her students' testimony that Fields was in fact an effective teacher, there is competent evidence to support the trial court's reinstatement decision and we must accordingly affirm.

## II.

¶ 20 As for the trial court's decision to award attorney fees to Fields, School District charges that it should be reversed because the trial court lacked jurisdiction under Oklahoma's Judgments Against Municipalities Act, 62 O.S.2001 § 361, et seq. ("JAMA"), to enter such a judgment in the absence of proof of School District's financial condition. Although School District did not raise this argument before the trial court, it is entitled to raise it for the first time on appeal because it involves a question of subject matter jurisdiction. Shaffer v. Jeffery,

1996 OK 47, ¶ 7, 915 P.2d 910, 913. We review de novo questions involving the jurisdictional power of the trial court to act. Jackson v. Jackson, 2002 OK 25, ¶ 2, 45 P.3d 418, 422.

¶ 21 JAMA provides in pertinent part:

Before final judgment in any suit based on contract ... shall be rendered against any municipality by any court of any county in the State of Oklahoma, except in proceeding to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality....

\* \* \*

No judgment shall be rendered against any municipality by any court until the provisions of Section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect.

62 O.S.2001 §§ 362, 363 (emphasis added). The Supreme Court has found these provisions state unequivocally that a judgment rendered against a municipality absent the required financial evidence under 62 O.S.2001 § 362 is a nullity. Valley Vista Dev. Corp., Inc. v. City of Broken Arrow, Okla., 1988 OK 140, ¶ 9, 766 P.2d 344, 348. Fields contends her attorney fee award is valid despite the fact that she did not offer proof of School District's outstanding legal indebtedness under JAMA because (1) this is not an action grounded in contract; (2) School District is not a self-insurer and is fully covered by liability insurance; and (3) the Teacher Due Process Act is a valid act of the Legislature.

¶ 22 The claim that this action is not based on contract rings hollow. First, Fields sought a trial de novo of her dismissal based on her belief that the school board violated the Teacher Due Process Act in not renewing her teaching contract. Second,

3. For example, the statement on Fields's Job Targets Report that "[y]our evaluation dated November 13, 2000 has the following unsatisfactory: # 1, # 2, # 5 (preparation, routine, and lesson plans)" corresponds to "1. Preparation—plans for delivery of the lesson relative to short term and long term objectives; 2. Routine—uses minimum class time for non-instructional routines thus maximizing time on task; 5. Lesson Plans—writes daily lesson plans designed to achieve the identified objectives" on Fields's evaluation, where the performance necessary to satisfy each category is clearly spelled out.

Fields is entitled to the full protection of the Teacher Due Process Act because she is a "career teacher" in that she "has completed three (3) or more consecutive complete school years in such capacity in one school district under a written teaching contract." 70 O.S.2001 6–101.3. Thus, without her underlying employment contract, Fields would not be entitled to the protections of the Teacher Due Process Act, including trial *de novo* in district court. Finally, even if this action were classified as quasi-contractual in nature, judgments against school districts based on quasi-contractual claims are likewise unauthorized absent proof of the school district's outstanding legal indebtedness pursuant to § 362 of JAMA. *See Clay v. Independent Sch. Dist. No. 1 of Tulsa County,* 1997 OK 13, 935 P.2d 294.

¶ 23 Moreover, even if the underlying action is neither contractual nor quasi-contractual, JAMA applies nonetheless because its financial disclosure provisions have been incorporated into Oklahoma's Governmental Tort Claims Act ("GTCA"), 51 O.S. 2001 § 151 *et seq.* Liability in tort of the state or its political subdivisions, including school districts, is exclusive under the GTCA. The GTCA defines "tort" as "a legal wrong, *independent of contract,* involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." 51 O.S.2001 § 152(11) (emphasis added). The "Enforcement of Judgments" subsection of the GTCA provides that:

> For the payment of any judgment obtained under the provisions of this act against a political subdivision *that is a self-insurer or not fully covered by liability insurance,* the manner of paying a money judgment shall be as follows. Proof of indebtedness, as required in Sections 362 through 364 of Title 62 of the Oklahoma Statutes and evidence of any estimated tax levy or increases necessary to reimburse the sinking fund for the purposes of the judgment as provided in Section 431 of Title 62 of the Oklahoma Statutes, and other evidence or

statements which the court may require, shall be made to the court before final judgment is rendered. . . .

51 O.S.2001 § 159(C) (emphasis added). Accordingly, even if this action sounds in tort rather than contract or quasi-contract, the indebtedness disclosure provisions of JAMA apply if School District is "a self-insurer or not fully covered by liability insurance."

¶ 24 On appeal, the only evidence to which Fields points in support of her claim that School District is fully covered by liability insurance is testimony by counsel for School District during the attorney fees hearing in an entirely different action in which School District sought attorney fees from a teacher. This is plainly insufficient to establish that School District is fully insured in the instant action. Fields can point to no record evidence to substantiate her claim that School District has full insurance coverage in this matter. Accordingly, even if this action sounded in tort rather than contract, the proof-of-indebtedness provisions of JAMA apply, and the district court was without jurisdiction to issue an attorney fees judgment against School District without first requiring Fields to show School District's indebtedness pursuant to 62 O.S.2001 § 362, or that School District is not self-insured or is fully covered by liability insurance.

¶ 25 Article 10, § 26 of the Oklahoma Constitution prohibits school districts from becoming indebted in an amount exceeding annual income without the assent of three-fifths of the voters. Together, Article 10, § 26 of the Oklahoma Constitution and JAMA serve to insure that school districts operate on a cash basis each year. *See Valley Vista,* ¶ 13, 766 P.2d at 348–49; *Independent Sch. Dist. No. 1 v. Howard,* 1959 OK 17, ¶ 6, 336 P.2d 1097, 1098. In support of her final defense of the legitimacy of her attorney fees award, Fields cites *Smartt v. Board of County Comm'rs of Craig County,* 1917 OK 590, ¶ 20, 169 P. 1101, 1104 which held that Article 10, § 26 of the Oklahoma Constitution does not prohibit schools from becoming indebted to pay those liabilities "imposed by the superior power of the sovereignty as expressed in the Constitution or valid acts of the Legislature." Fields reasons that be-

cause the Teacher Due Process Act is a valid act of the Legislature, her attorney fees award falls within the *Smartt* exception and Tulsa School District should be required to pay the award even though it is not a budgeted expense in the current school year.

▮▮▮▮ ¶ 26 In making this argument, Fields ignores *City of Del City v. FOP, Lodge No. 114*, 1993 OK 169, 869 P.2d 309, in which the Supreme Court reexamined and narrowed its holding in *Smartt*. In *Del City*, the Supreme Court held that "[a] legislative act cannot trump a constitutional provision and create a municipal liability that necessarily requires unconstitutional funding practices." *Id.* at ¶ 36, 869 P.2d at 318. The Court concluded that cases decided after *Smartt* generally involve two distinct categories of municipal financial commitments:

> (1) those obligations imposed upon the municipality by either the Federal or Oklahoma Constitution, and (2) *those obligations* which are mandated not by the Constitution, but are *imposed* either *by the legislature* or by a voluntary contract entered into between the parties. Those obligations which fall under the first category are not limited or prohibited by Section 26. *Those which fall into the second category are controlled by Section 26 and are thus unconstitutional.*

*Id.* at ¶ 24, 869 P.2d at 315(emphasis added). Accordingly, if a school district's indebtedness results from an obligation imposed by an act of the Legislature or by a voluntary contract, the *Smartt* /Section 26 exception to the cash-only rule does not apply and the school may not become indebted to meet that obligation. *See Baylis v. City of Tulsa*, 1989 OK 90, 780 P.2d 686 (holding that expenses incurred by the city in voluntarily obligating itself to a five percent pay raise for certain personnel fall within the statutory jurisdictional mandates of 62 O.S.2001 §§ 362 and 363 and require that plaintiff prove the municipality's ability to pay the claim at issue in order that any judgment not exceed the constitutional debt limitations); *Protest of Carter Oil Co.*, 1931 OK 15, 296 P. 485 (holding that in spite of a legislative enactment requiring transportation of school children to school, and a constitutional provision requir-

ing a public school system, school district's obligation to pay for school buses was not exempt from the indebtedness prohibition of Section 26 because the appropriation, although involuntary under an act of the Legislature, was not mandatory under the Constitution).

¶ 27 Applying *Del City* to the facts at bar, it goes without question that the Teacher Due Process Act is an act of the Legislature. As such, the attorney fees award against School District falls into the second category of financial obligations outlined in *Del City*— those imposed by acts of the Legislature controlled by the indebtedness prohibition of Article 10, § 26. This holding is consistent with the policy announced in *Del City* that courts must narrowly construe the *Smartt/* Section 26 exception and "closely scrutinize any claim which attempts to gain protection from the exception." *Id.* at ¶¶ 31, 38, 869 P.2d at 317–18.

▮▮▮▮ ¶ 28 That being the case, on remand, as a prerequisite to the trial court entering a valid enforceable attorney fees order against School District, it must be shown on the record that: (1) School District is fully covered for such judgment by liability insurance; or, (2) if School District is not fully covered by insurance or is self-insured then 62 O.S. § 362 must be complied with by showing School District's outstanding legal indebtedness. The purpose is to determine the method of compliance with 62 O.S. § 365.5. Generally speaking, this statute and the cases construing it provided that a judgment is to be paid by tax levies, one-third each year for three years, unless there are sufficient funds in a sinking fund out of which the judgment can be paid in a lump sum. See *Russell v. Board of County Commissioners of Carter County*, 2000 OK CIV APP 21, 1 P.3d 442, 445; and, *Oklahoma Attorney General Opinion*, 00–06, 2000 OK AG 60. Based on the evidence presented as required by § 362, the trial court must determine how the attorney fee judgment will be paid by School District.

## Conclusion

¶ 29 As stated above, the trial court's order reinstating Fields is affirmed. The order

awarding attorney fees and costs is, for the reasons set forth, reversed. This case is remanded to the trial court for further proceedings on the attorney fee issue consistent herewith.

¶30 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

HANSEN, P.J., and ADAMS, J., concur.