**Margie BABB, Plaintiff–Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. I–5 OF ROGERS COUNTY, OKLAHOMA, Defendant–Appellee.**

No. 73558.

Supreme Court of Oklahoma.

April 7, 1992.

OPALA, Chief Justice.

The issues presented for review are: [1] Does the so-called "teacher tenure law"[1]

1. The provisions of the teacher tenure law applicable at the time this cause arose are found in

embodied in the Oklahoma School Code [Code][2] give a tenured[3] teacher priority for renewal over a nontenured teacher in the course of a reduction-in-force implementation in those instances in which the former is certified to teach the very subject for which a nontenured teacher is retained? and, if this be answered in the affirmative, [2] Did the school board's implementation of its reduction-in-force [RIF] program, which resulted in the appellant tenured teacher's nonrenewal, offend the statutory tenure regime? We answer both questions in the affirmative.[4]

## THE ANATOMY OF LITIGATION

*The facts are undisputed.* During the 1986–1987 school term Margie Babb [Babb], appellant, completed her ninth year as a tenured classroom teacher in the Independent School District No. I–5 of Rogers County [District]. In April 1987, after some parents complained about Babb's teaching practices, the District reassigned her to the position of elementary librarian. Her teaching contract required that she accept this assignment.[5]

On March 30 of the following school year, after the District's average daily attendance had decreased by 40.23 students, the superintendent recommended to the District Board of Education [Board] that (a) RIF policy be put into effect for the 1988–1989 school term, (b) the elementary librarian position be eliminated and (c) the special education program be decreased by one staff member.[6] On April 4, 1988 the Board voted to implement the policy and not to renew the contracts of fifteen nontenured teachers. On April 7 the School Board met to consider the proposed teacher contract nonrenewals. Babb, then present with her legal counsel, was afforded the opportunity to state her case to the Board, which then voted not to renew her contract pursuant to its RIF policy. *The nonrenewal decision was made without any reference to the complaints submitted in April 1987. At the same meeting the Board voted to reemploy fifteen nontenured teachers.*

Babb was timely notified of her nonrenewal as well as of the time and date of her post-termination hearing before the Board,[7]

---

70 O.S.1981 §§ 6–101 et seq. The majority of these provisions were either repealed or renumbered in 1989 (Okl.Sess.L.1989, 1st Ex.Sess., Ch. 2 §§ 1 et seq., eff. July 1, 1990). For the tenure regime that governs after July 1, 1990, *see* the Teacher Due Process Act of 1990, 70 O.S.1991 §§ 6–101.20 to 6–101.30.

2. 70 O.S.1991 §§ 1–101 et seq.

3. Tenure is defined as "a status granted usu[ally] after a probationary period to one holding a position esp[ecially] as a teacher and protecting him from dismissal except for serious misconduct or incompetence determined by formal hearings or trial." Webster, Third New International Dictionary at 2357. Black's Dictionary similarly defines tenure as a "[s]tatus afforded to teacher or professor upon completion of trial period, thus protecting him or her from summary dismissal. Tenure denotes relinquishment of the employer's unfettered power to terminate the employee's services." Black's Law Dictionary 5th Ed. at 1317. *See also Nessen v. Bd. of Educ. of Town of Torrington,* 3 Conn. App. 630, 491 A.2d 419, 421 (1985); *Cipu v. North Haven Board of Education,* 32 Conn.Sup. 264, 351 A.2d 76, 80 (1974).

4. Because we hold that during the implementation of its RIF policy, the school board impermissibly gave priority for renewal to a nontenured teacher over the appellant tenured teacher,

we need not address today the issue whether appellant, following her nonrenewal, was entitled to a post-termination hearing before a panel pursuant to the procedures prescribed by 70 O.S.1981 §§ 6–103 et seq. Sections 6–103 to 6–103.15 were repealed in 1989 (Okl.Sess.L.1989, 1st Ex.Sess., Ch. 2, § 122, eff. July 1, 1990); for the statutory regime that governs after July 1, 1990, *see* the Teacher Due Process Act, *supra* note 1.

5. Babb's "Certified Employee Contract" provides in part:
   "The Employee Agrees To Carry Out The Following Obligations·
   1. to accept the work and perform the duties assigned by superintendent and principal, realizing that assignments will be made in an effort to provide the best possible educational program for the youth of this community. * * *"

6. State funding for school districts is governed by average daily attendance. The District received approximately $1,700 in state funding for each student in school based on average daily attendance at the time Babb was not reemployed.

7. The superintendent's May 5, 1988 letter notified Babb that her request for a post-termination hearing before the school board had been granted and was set for May 19, 1988.

which she chose not to attend. Babb then commenced this action for reinstatement of her tenure status. Both Babb and the District sought summary judgment. The district court overruled Babb's motion and gave summary judgment to the Board on the ground that its RIF policy had been implemented in good faith.

I

## IN THE COURSE OF RIF IMPLEMENTATION PROCESS OKLAHOMA'S "TEACHER TENURE LAW"[8] GIVES TENURED TEACHERS PRIORITY FOR RENEWAL OVER NONTENURED FACULTY

■ The District asserts that the only limitation on a school board's discretion to eliminate a tenured teacher's position in the course of a reduction-in-force implementation is that the decision be made in good faith, in the best interests of the school district and pursuant to a reasonable plan or policy.[9] This approach, the District argues, is comparable to the duty judicially imposed on school boards by the good-faith and arbitrary-and-capricious standards of review.[10] Babb urges her tenure status gives her priority for renewal over a nontenured teacher assigned to a subject she is certified to teach.[11]

The tenure rights Babb invokes are based on §§ 6–101 et seq.[12] of the Code.[13] Teacher tenure law is intended to give job security to competent and qualified teachers and to protect them from dismissal or nonrenewal for political, personal, arbitrary or discriminatory reasons.[14] Tenure status,[15] which is statutorily conferred upon teachers who have been in employment of the school district the required number of

8. See supra note 1.

9. The District bases its position on a 1979 Attorney General opinion. Op.Atty.Gen. 79–151.

10. The District cites several cases which have upheld a school board's RIF implementation absent a finding that the decision was arbitrary, unreasonable or otherwise in bad faith. See Chester v. Harper Woods School Dist., 87 Mich. App. 235, 273 N.W.2d 916 (1979); Dykeman v. Board of Education, 210 Neb. 596, 316 N.W.2d 69 (1982); Paradis v. School Administrative Dist., Etc., 446 A.2d 46 (Me.1982); Reed v. Edgeley Public School District No. 3, 313 N.W.2d 775 (N.D.1981). We note that only Paradis, supra, dealt with a nontenured teacher who had been retained over a tenured teacher. There, the court allowed the nontenured person to be retained as teacher for the same subject for which a terminated tenured teacher was qualified. The court refused to accord preferential status to the tenured teacher, requiring only that the board carry out its RIF policy in good faith. The court's decision rests on clear legislative history showing the law-making body's prior rejection of any notion that would give a tenured teacher priority in a reduction-in-force implementation process. No comparable legislative mandate can be divined in Oklahoma.

11. Babb relies on cases holding that a mere good-faith requirement would not always protect a tenured teacher from being terminated in favor of a nontenured teacher assigned to a subject the tenured teacher is qualified to teach. See Pickens County Board of Education v. Keasler, 263 Ala. 231, 82 So.2d 197, 199 (1955); Board of School Trustees v. O'Brien, 190 A.2d 23 (Del.1963); Hankenson v. Board of Education of

Waukegan TWP, 15 Ill.App.2d 440, 146 N.E.2d 194 (1957); Watson v. Burnett, 216 Ind. 216, 23 N.E.2d 420 (1939); Coats v. Bd. of Educ., Un.S. Dist. No. 353, 233 Kan. 394, 662 P.2d 1279, 1283–1285 (1983); Gassen v. St. Charles Parish School Board, 199 La. 954, 7 So.2d 217, 220 (1942); Streibert v. Board of Directors of School District, 339 Pa. 119, 14 A.2d 303, 305 (1940). In Coats, supra, the court refused to confine its review to a mere good-faith requirement because the protection of the tenure law called for stricter standards. Instead, the court declared that tenured teachers should be given priority for renewal over nontenured teachers who are qualified to teach the same courses.

12. See supra note 1.

13. Supra note 2.

14. In Lovelace v. Ingram, 518 P.2d 1102, 1104 (Okl.1974), we noted that a teacher tenure law promotes good order and the welfare of the State and school system by preventing the removal of capable and experienced teachers for reasons arising solely from political or personal whim. See in this connection Independent School Dist. No. 10, Seminole Cty. v. Lollar, 547 P.2d 1324, 1325–1326 (Okl.App.1976); Tomiak v. Hamtramck School Dist., 138 Mich.App. 644, 360 N.W.2d 257, 260 (1984); Leaming v. Unified School Dist. No. 214, 242 Kan. 743, 750 P.2d 1041, 1046 (1988); Taborn v. Hammonds, 324 N.C. 546, 380 S.E.2d 513, 519 (1989), citing Taylor v. Crisp, 286 N.C. 488, 212 S.E.2d 381, 386 (1975).

15. For a definition of "tenure", see supra note 3.

years,[16] demonstrates legislative intent to grant teachers substantive rights in their continued position, which are not possessed by those in a temporary or probationary status. Under this regime, teacher contracts are automatically renewed on a continuing basis unless a school board or a teacher acts to prevent the employment's renewal.[17] *Once attained, tenure status cannot be lost except on the grounds sanctioned by law.*[18]

While the Code does not specifically address a school board's authority not to reemploy[19] teachers when implementing its RIF plan, that power clearly is implicit in the statutory scheme[20] which allows local school boards to formulate a complete education program for the students in the district and to determine the number of personnel necessary to implement the plan within the existing funding limits.[21]

When declining enrollment requires a reduction in force, a school board must balance a district's needs against available resources and take appropriate action to curtail personnel. While a school board may exercise wide latitude and autonomy in choosing a method for reducing the teaching force,[22] its RIF policy must none-theless conform to the commands of tenure law. Tenured faculty have a claim to a preferential status over nontenured faculty in implementation of a reduction-in-force plan. To hold otherwise would emasculate the statutory tenure policy and let school boards do indirectly what they cannot do directly.[23] Tenure rights must be protected and school boards afforded the necessary discretion to so shape quality education programs as to make them meet the available financial resources.

In sum, a school board is always free to adjust its teachers' roll to meet economic necessity, but it cannot invoke unsanctioned grounds to subvert the statutorily mandated security-from-termination protection for tenured teachers.

## II

## THE SCHOOL BOARD'S RIF PLAN OFFENDS THE TEACHER TENURE LAW BY GIVING PRIORITY FOR RENEWAL TO NONTENURED TEACHERS OVER QUALIFIED TENURED TEACHERS

■ Babb does not challenge the Board's determination of the necessity for a reduc-

---

**16.** The terms of 70 O.S.1981 § 6–102.1(6) provided:

"'Tenured teacher' ... means a duly-certificated teacher who has completed three (3) or more consecutive complete school years of teaching service in one school district under a written teaching contract, as provided by law...."

Section 6–102.1 was repealed in 1989 (Okl.Sess. L.1989, Ch. 2, § 122, eff. July 1, 1990); for the statutory regime that governs after July 1, 1990 *see* the Teacher Due Process Act, *supra* note 1.

**17.** 70 O.S.1981 § 6–101(E). Section 6–101(E) was not substantively changed by 1989 and 1991 amendments (Okl.Sess.L.1989, 1st Ex.Sess., Ch. 2 § 67, eff. July 1, 1990; Okl.Sess.L.1991, Ch. 3, § 5, eff. July 1, 1991).

**18.** The terms of 70 O.S.1991 § 6–103.4(A) provided that a recommendation for dismissal or nonreemployment of a tenured teacher "shall contain the one or more statutory grounds" which are set forth in 70 O.S.1981 § 6–103(A). These sections were repealed in 1989 (1st Ex. Sess., Ch. 2, § 122, eff. July 1, 1990). For the statutory regime that governs after July 1, 1990 *see* the Teacher Due Process Act, *supra* note 1.

**19.** "Nonreemployment" is a statutorily defined word of art which "means the nonrenewal of a teacher's contract under which he was teaching upon expiration of the contract." 70 O.S.1981 § 6–102.1(3). Section 6–102.1(3) was repealed in 1989 (Okl.Sess.L.1989, 1st Ex.Sess., Ch. 2, § 122, eff. July 1, 1990). *See also Maupin v. Independent School Dist., Etc.,* 632 P.2d 396, 399 (Okl.1981).

**20.** The terms of 70 O.S.1981 § 5–117(A)(3) provided:

"A. The board of education of each school district shall have power to: * * * 3. maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district; * * * "

The quoted language was not changed by the 1989, 1990 or 1991 amendments.

**21.** *See* Op.Atty.Gen. 79–151.

**22.** *See generally* Annot., Right to dismiss public school teacher on ground that services are no longer needed, 100 ALR2d 1141 (1965).

**23.** *Board of School Trustees v. O'Brien, supra* note 11 at 27; *Watson v. Burnett, supra* note 11 23 N.E.2d at 423.

tion in force. Rather, she asserts that the method used to implement the Board's RIF plan deprived her of tenure protection. The Board's RIF plan [24] divides teachers with tenured status into three classifications—(a) elementary and (b) secondary teachers *with classroom assignments* and (c) those holding *nonteaching positions*.[25] By this scheme tenured faculty are prevented from changing classifications in order to be considered for a classroom assignment in a subject they are qualified to teach.[26] Nontenured teachers, on the other hand, are not subject to similar restrictions. After their nonrenewal as a result of the RIF plan,[27] they may nonetheless be immediately considered for renewal if "needed to fill existing and required positions." [28]

■ Even though at the time of her assignment to the elementary librarian position Babb had attained tenure status as an elementary school teacher, she became locked by the RIF procedures into the *nonteaching classification*. This prevented her from priority consideration for renewal over a nontenured teacher in an elementary classroom position. When, as here, a school board's RIF plan gives tenure-like priority to nontenured faculty, the board in effect elevates its nontenured personnel to the status of tenured faculty. This, we hold, it cannot do for any purpose. A reduction-in-force plan must be so implemented so as to protect tenure status from erosion on grounds unsanctioned by law. The courts cannot sanction school boards' actions, whether taken in good or bad faith,

---

**24.** The pertinent terms of the Board's RIF plan (JANUARY 5, 1984 REDUCTION IN FORCE FOR CERTIFIED PERSONNEL INOLA PUBLIC SCHOOLS) are:

"*Rationale*

The Board of Education is aware of both the desire to maintain a comprehensive well staffed program and the need to provide security for staff members.... If at any time our school is faced with a reduction in resources or a change in need for a particular program or activity, the Board ... will exercise its authority to reduce staff and to identify those personnel least necessary and valuable to the changing needs of our school system. With this in mind, the following procedures will be followed in staff reduction. *Procedure*

Step 1. On or before April 1 of the current school year the Superintendent will advise the Board of Education of a need to reduce staff.

Step 2. The administrative staff shall determine the curricular area, subject level or programs that will either lose staff positions or be eliminated. Step 2 shall be directed at those areas which have the least affect upon: classroom instruction, taking into consideration teacher-pupil ratio and the bearing such cuts would have upon the student's education outcome.

Step 3. Prior to April 10th, the Board ... will notify ... all nontenured teachers that their contract renewal is contingent on an as needed basis ... Notices or re-election will bear the statement 'In view of the present uncertainty regarding the availability of operating revenues and/or declining student enrollment for the next school year, your reemployment is conditional on an *as needed* basis. You should be aware that your contract has not been renewed for the _____ school year.'

Step 4. Supervisory and administrative staff will recommend immediately to the Superintendent the re-employment of those nontenured members of the staff who are needed to fill

existing and required positions using the following priority selection procedure:

   a. Qualifications for the designated position.

   b. Evaluation or rating by supervisory staff.

   c. Previous experience or term of employment with the local school district.

   d. Other personal or professional criterion.

Step 5. The Superintendent of schools will recommend to the Board ... the re-employment of those non-tenured members of the staff whom the administration has designated as needed to staff essential and continuing positions.

Step 6. Teachers will be placed in classifications. (A) Those certified elementary teachers *with tenure actually teaching* in grades K–6.... (B) Those secondary certified teachers *with tenure* and *actually teaching* in subject areas four hours or more.... (C) Those persons *with tenure* and holding a current teaching certificate and employed in a *non-administrative non-teaching* position requiring professional certification....

Step 7. In the event that a position or program is eliminated by the Board of Education which is staffed by a tenured teacher, that teacher will be given first consideration for any available job opening for which he/she qualifies in the school system, *staying within their classification* .... It will not be contrary to this policy to first reassign volunteers with major certification, from one classification to another, with the agreement of all involved administrators." (Emphasis added.)

**25.** *See* RIF policy, Step 6, *supra* note 24.

**26.** *See* RIF policy, Step 7, *supra* note 24.

**27.** *See* RIF policy, Step 3, *supra* note 24.

**28.** *See* RIF policy, Step 4, *supra* note 24.

which manipulate job assignments in a manner that defeats the rights of tenured teachers and circumvents the purpose and spirit of the tenure law.

The trial court's summary judgment is reversed and the cause remanded with directions to give Babb summary judgment.

LAVENDER, SIMMS, HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, V.C.J., dissents.