Jim R. BARTON, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO.
I–99 OF CUSTER COUNTY, Oklahoma,
a/k/a Clinton Public Schools, Appellee.

No. 85197.

Supreme Court of Oklahoma.

March 19, 1996.

Rehearing Denied April 24, 1996.

Richard B. Wilkinson, Oklahoma Education Association, Oklahoma City, for Appellant.

Linda Maria Meoli, William P. Bleakley, The Center for Education Law, Oklahoma City, for Appellee.

PER CURIAM:

■ The only issue presented on certiorari is whether the trial court erred when it granted summary judgment. It held that a career or tenured teacher[1] may be released pursuant to a reduction-in-force plan (RIF plan) even if the career teacher is qualified to fill positions held by nontenured employees. We find that if a teaching position which is occupied by a career teacher is eliminated pursuant to a RIF plan, and the tenured teacher is qualified for another teaching position occupied by a nontenured teacher, *Babb v. Independent School Dist. No. I–5 of Rogers Co., Okla.*, 829 P.2d 973 (Okla.1992) requires that reasonable accommodations be made to give priority for contract renewal to qualified tenured personnel over nontenured teachers. Summary judgment was improper.

## FACTS

The appellant, Jim R. Barton. (Barton/teacher) is certified by the State of Oklahoma to teach general industrial arts, wood and metal technology, zoology, biology and driver/safety education in the public school system. The appellee, the Independent School District No. I–99 of Custer County (school district/board) hired him to teach driver's education in Clinton, Oklahoma. After he taught driver's education for the school district for 19 years, the school superintendent determined that a reduction-in-force was necessary to reduce the 1992–93 school year budget expenditures by approximately $120,000.00.

On March 24, 1992, the superintendent informed the school board that it needed to eliminate at least four teaching positions for the 1992–93 school year to reduce the school budget by approximately $120,000.00. Although the superintendent was of the opinion that normal attrition would remedy some of the budgeting problems, he recommended that the board eliminate the driver's education program and nonrenew Barton's teaching contract. On March 26, 1992, the school board notified the teacher of the superintendent's recommendations and set a

---

1. Title 70 O.S.1991 § 6–101.3 provides in pertinent part:
 "... 4. 'Career teacher' means a teacher who has completed three (3) or more consecutive complete school years in such capacity in one school district under a written teaching contract ...
 6. 'Probationary teacher' means a teacher who has completed fewer than three (3) consecutive complete school years in such capacity in one school district under a written teaching contract ..."
 Prior to 1991, the term tenured teacher was used rather than the term career teacher. See 70 O.S.1981 § 6–102.1(6). For purposes of this opinion, both terms are used interchangeably.

hearing on the recommendations for May 4, 1992.

On May 5, 1992, almost a month after *Babb v. Independent School Dist. I–5 of Rogers Co., Okla.*, 829 P.2d 973 (Okla.1992) was promulgated, the board wrote Barton advising him that the driver's education program would be eliminated, and that his teaching contract would not be renewed. Thereafter, the school district employed eight more certified teachers for the 1992–1993 school year than it had employed the previous year, and it increased expenditures by approximately $600,000.00 over the previous year's budget.

On May 17, 1993, Barton filed a lawsuit against the school district, alleging that: 1) the school district breached his employment contract and acted in bad faith when it decided not to renew his teaching contract; and 2) it violated the Oklahoma Open Meeting Act, 25 O.S.1991 § 301 et seq., when it met to consider whether to renew Barton's employment contract.[2] The school district denied the allegations and moved for summary judgment. On February 3, 1995, the trial court granted summary judgment to the school district. The teacher appealed, and the Court of Appeals affirmed. We granted certiorari on January 8, 1996.

**PURSUANT TO OUR HOLDING IN *BABB V. INDEPENDENT SCHOOL DIST. I–5 OF ROGERS CO., OKLA.*, 829 P.2D 973 (OKLA.1992), IF A TEACHING POSITION WHICH IS OCCUPIED BY A CAREER TEACHER IS ELIMINATED PURSUANT TO A REDUCTION–IN–FORCE PLAN AND THE TEN-URED TEACHER IS QUALIFIED FOR ANOTHER TEACHING POSITION OCCUPIED BY A NONTENURED TEACHER, REASONABLE ACCOMMODATIONS MUST BE MADE TO GIVE PRIORITY FOR CONTRACT RENEWAL TO QUALIFIED TENURED PERSONNEL OVER NONTENURED TEACHERS.**

The teacher asserts that the trial court erred in granting summary judgment because material fact questions exist concerning: 1) whether another teaching position existed for the 1992–1993 school year for which he was qualified to teach and which was occupied by either a nontenured or a probationary teacher; and 2) whether the school board acted in good faith in implementing its reduction-in-force plan. The school district contends that pursuant to the terms of its 1990–91 collective bargaining agreement,[3] it was not required to offer the teacher another assignment. Nor, notwithstanding the terms of the collective bargaining agreement, does Oklahoma law require it to reassign him to another teaching position occupied by either a nontenured or a probationary teacher which he was qualified to teach.[4] We disagree.

■■■ Pursuant to Rule 13, 12 O.S.1991, Ch.2 App. Rules for the District Courts, a motion for summary judgment may be filed if the pleadings, depositions, interrogatories, affidavits and other exhibits reflect that there is no substantial controversy pertaining to any material fact.[5] Even when basic facts are undisputed, motions for summary judg-

---

**2.** The Court of Appeals determined that the agendas posted for the May 4, 1992, hearing were sufficient to comply with the requirements of the Oklahoma Open Meeting Act, 25 O.S.1991 § 301 et seq. This issue was not presented for review on certiorari, and we need not address it because this cause must be remanded because there are material questions of fact to be determined.

**3.** See Article II–N of the 1990–91 collective bargaining agreement, note 10, infra.

**4.** It is undisputed that the school board's decision not to renew Barton's contract was pursuant to the superintendent's determination that a reduction-in-force was necessary, rather than one of the statutory grounds for nonreemployment. See, 70 O.S.1991 § 6–101.22.

**5.** *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 163 (Okla.1989); Rule 13, 12 O.S.1991, Ch. 2 App. provides in pertinent part:

"a. A party may move for judgment in his favor on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits on file ... show that there is no substantial controversy as to any material fact ...

b. If the adverse party ... wish[es] to oppose the granting of the motion, they shall serve on the moving party and file ... a concise written statement of the material facts as to which he or they contend a genuine issue exists ... The adverse party shall attach to the statement affidavits and other material containing facts that would be admissible in evidence ..."

ment should be denied, if from the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.[6] Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[7] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[8]

Our decision in *Babb v. Independent School Dist. No. I-5 of Rogers Co., Okla.,* 829 P.2d 973 (Okla.1992) is dispositive of the question of whether the entry of summary judgment was erroneous. *Babb* involved the issue of whether a tenured teacher who was certified to teach the same subject taught by a nontenured teacher has priority for contract renewal over the nontenured teacher when a reduction-in-force plan is implemented.[9] In *Babb*, a tenured classroom teacher was reassigned to the position of elementary librarian. The following school year, the superintendent recommended to the school board that a reduction-in-force plan be implemented for the next school year. The board met and voted not to renew the contracts of fifteen nontenured teachers. At the board's next meeting, it voted not to renew the tenured teacher's contract and it voted to reemploy the fifteen nontenured teachers. The tenured teacher brought suit in district court, seeking reinstatement of tenure status. The school board asserted that the tenured teacher's contract was nonrenewed pursuant to its reduction-in-force plan, and that the RIF plan had been implemented in good faith.

The *Babb* Court said:

"Teacher tenure law is intended to give job security to competent and qualified teachers and to protect them from dismissal or nonrenewal for political, personal, arbitrary or discriminatory reasons. Tenure status, which is statutorily conferred upon teachers who have been in employment of the school district the required number of years, demonstrates legislative intent to grant teachers substantive rights in their continued position, which are not possessed by those in a temporary or probationary status. Under this regime, teacher contacts are automatically renewed on a continuing basis unless a school board or a teacher acts to prevent the employment's renewal. *Once attained, tenure status cannot be lost except on the grounds sanctioned by law.*

While the Code does not specifically address a school board's authority not to reemploy teachers when implementing its RIF plan, that power clearly is implicit in the statutory scheme which allows local school boards to formulate a complete education program for the students in the district and to determine the number of personnel necessary to implement the plan within the existing funding limits.

When declining enrollment requires a reduction-in-force, a school board must balance a district's needs against available resources and take appropriate action to curtail personnel. While a school board may exercise wide latitude and autonomy in choosing a method for reducing the teaching force, its RIF policy must nonetheless conform to the commands of tenure law. Tenured faculty have a claim to preferential status over nontenured faculty in implementation of a reduction-in-force plan. To hold otherwise would emasculate the statutory tenure policy and let school boards do indirectly what they cannot do directly. Tenure rights must be protected and school boards afforded the necessary

---

6. *Markwell v. Whinery's Real Estate Inc.,* 869 P.2d 840, 845 (Okla.1994).

7. *Carris v. John R. Thomas & Assoc.,* 896 P.2d 522, 530 (Okla.1995); *Roach v. Atlas Life Ins. Co.,* see note 5, supra.

8. *Ross v. City of Shawnee,* 683 P.2d 535, 536 (Okla.1984).

9. We note that in *Babb v. Independent School Dist. No. I-5 of Rogers Co., Okla.,* 829 P.2d 973 (Okla.1992), the applicable provisions of the teacher tenure law were found at 70 O.S.1981 § 601 et seq. The majority of these provisions were either repealed or renumbered in 1989. The tenure regime that is applicable here is the Teachers Due Process Act of 1990, 70 O.S.1991 §§ 6-101.20 to 6-101.30.

discretion to so shape quality education programs as to make them meet the available financial resources.

In sum, a school board is always free to adjust its teachers' roll to meet economic necessity, but it cannot invoke unsanctioned grounds to subvert the statutorily mandated security-from-termination protection for tenured teachers." (Emphasis in original.) (Citations omitted.)

 The school district's RIF policy is contained in its 1990–91 collective bargaining agreement.[10] The agreement provides that when a reduction-in-force is implemented and the school board has determined that a teaching position or positions will be eliminated, the position eliminated will be the determining factor, not the teachers occupying those positions. If a position is eliminated, licensed teachers are released first, followed by probationary teachers and career teachers are the last to be released. The collective bargaining agreement also provides that a career teacher may involuntarily be transferred to another teaching position if

the enrollment or the class size changes.[11] Under this scheme, a career teacher who occupies a teaching position, must be renewed before other nontenured teachers or probationary teachers are assigned to teaching positions which the career teacher may be qualified to teach. This scheme prevents the involuntary transfer of a career teacher to a position which may then be eliminated. Otherwise, a tenured teacher could be prevented from receiving priority consideration for renewal over a nontenured or probationary teacher. Regardless of whether a school district acts in good faith or bad faith, failure to provide preference to career teachers could manipulate job assignments thereby defeating the rights of tenured teachers and circumventing the purpose and spirit of the tenure law. When a reduction-in-force plan is implemented, tenured teachers have priority for contract renewal over nontenured teachers. A school board's RIF plan may not give priority for contract renewal to nontenured teachers over qualified tenured teachers.[12]

**10.** Article II–N of the 1990–91 collective bargaining agreement provides in pertinent part:

"... B. In implementing a reduction in force, the position or positions to be eliminated will be determined by the Board first and, thereafter, the following procedures will be used to determine the teacher or teachers to be reduced as a result thereof:
1. The Board will attempt to reduce the staff first by norma l attrition.
2. The positions eliminated will be the determining factor, not the teachers occupying those positions.
3. A licensed teacher in an eliminated position will be released first.
4. A probationary teacher in an eliminated position will be released second.
5. A career teacher in an eliminated position will be eliminated third...."

**11.** Article II–I of the 1990–91 collective bargaining agreement provides in pertinent part:

"... B. If, due to overstaffing or changes in enrollment or class sizes, it becomes necessary to transfer teachers the following criteria shall be used:
1. If only one person is qualified to fill a vacancy, he/she shall be moved for one contract year.
2. Volunteers to transfer shall be moved first.
2a. If more than one career teacher is being considered for involuntary transfer, the following criteria will be followed:

1. The position being eliminated.
2. Teacher certification and experience.
3. If there are no volunteers, a list of vacancies shall be presented to the teacher to be moved and said teacher shall have first choice of vacancies.
4. A teacher shall be placed only in an equivalent position which does not involve a reduction in rank or compensation...."

**12.** *Babb v. Independent School Dist. No. I–5 of Rogers Co., Okla.,* see note 9 at 976–78, supra. We note that the school district, after it decided to nonrenew the teacher's contract, provided in its 1992–9ɔ collective bargaining agreement the mandates imposed by *Babb.* The 1992–93 collective bargaining agreement provides in pertinent part:

"... For the 1992–93 school year, a career teacher in an eliminated position may be reassigned to a position held by a licensed or probationary teacher if the career teacher is certified for the position...."

The school district contends that once it entered into the 1990–91 negotiated agreement with its teachers implementing the RIF procedure it could not violate the provisions of the agreement and reassign Barton. We find this argument unpersuasive. The terms of the 1990–91 agreement do not prohibit the school district from complying with *Babb.* Furthermore, even if it did, specific terms of a collective bargaining agreement which contradict statutory mandates

**1046** 

■ The teacher is certified by the State of Oklahoma to teach general industrial arts, wood and metal technology, zoology, biology and driver/safety education in the public school system. He presented evidentiary materials alleging that the school district could have made reasonable accommodations with minimal effort to renew his contract by rearranging the schedules of two other teachers and by not renewing a probationary teacher's contract—resulting in preservation of his career status over a nontenured teacher. Accordingly, we find that a controversy exists on the material issues of whether the teacher could have been retained by a reasonable reassignment of classes among other teachers and that failure to do so, whether in good faith or bad faith, was a form of manipulation of job assignments which failed to protect his tenure status. Summary judgment was improper.

## CONCLUSION

Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[13] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[14] Pursuant to *Babb v. Independent School Dist. No. I–5 of Rogers Co., Okla.,* 829 P.2d 973, 976–78 (Okla.1992), when a reduction-in-force plan is implemented, tenured teachers have priority for contract renewal over nontenured teachers. A school board's RIF plan may not grant priority for contract renewal to nontenured teachers over qualified tenured teachers.

The teacher is certified by the State of Oklahoma to teach many subjects other than driver/safety education in the public school system. The teacher's evidence suggests

that the school district could have renewed his contract by making reasonable accommodations and rearranging the schedules of two other teachers and by not renewing a probationary teacher's contract—preserving his career status over a nontenured teacher. Because a controversy exists on the material issues, the trial court erred in granting summary judgment.

## CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED.

ALMA WILSON, C.J., KAUGER, V.C.J. and SIMMS, OPALA, SUMMERS and WATT, JJ., concur.

HODGES, LAVENDER and HARGRAVE, JJ., dissent.

---

or usurp principles in the Oklahoma School Code are void and unenforceable. See, *Raines v. Independent School Dist. No. 6,* 796 P.2d 303, 304 (Okla.1990); *Mindemann v. Independent School Dist. No. 6 of Caddo Co.,* 771 P.2d 996, 1002 (Okla.1989).

**13.** *Carris v. John R. Thomas & Assoc.,* see note 7, supra; *Roach v. Atlas Life Ins. Co.,* see note 5, supra.

**14.** *Ross v. City of Shawnee,* see note 8, supra.