2000 OK CIV APP 113

Owen HAWZIPTA, Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. I-004 OF NOBLE COUNTY, Oklahoma a/k/a Frontier Public Schools, Appellant.

No. 93,781.

Court of Civil Appeals of Oklahoma, Division 4.

Oct. 3, 2000.

Richard O'Carroll, O'Carroll & O'Carroll, Tulsa, Oklahoma for Appellee.

Jerry A. Richardson, John Eric Priddy, Rosenstein, Fist & Ringold, Tulsa, Oklahoma for Appellant.

1. A career teacher is defined in 70 O.S.1991, § 6–101.3(4), as:

   a teacher who has completed three (3) or more consecutive complete school years in such capacity in one school district under a written teaching contract[.]

*OPINION*

GOODMAN, C.J.

¶ 1 This is an appeal by Independent School District No. I–004 of Noble County, Oklahoma (District) from the trial court's September 22, 1999, order reinstating Owen Hawzipta (Teacher) to his position as a career teacher with District. District terminated Teacher's position on the ground of moral turpitude, but the district court, exercising its de novo appellate authority, reversed District's decision and ordered Teacher reinstated to his teaching position. District appeals. We affirm.

*Facts*

¶ 2 Teacher is a career teacher [1] assigned to District's Frontier Public Schools. In December 1998, Teacher was disciplined by Frontier principal Randy Robinson (Principal). Principal required Teacher to submit a plan of action to improve Teacher's teaching performance or face termination. Teacher complied, and any rancor over the incident appears to have abated. Principal testified he noticed no hostility directed towards him by Teacher, though Teacher's attitude became "resentful, defiant."

¶ 3 On April 20, 1999, a student informed Teacher that she and two other students had discovered "inappropriate" written material in the school trash dumpster. Teacher later asked the student to bring the material to him, which he testified was given to him in a closed box.[2] Teacher did not immediately examine the material, but told the student to deliver the box to Mrs. Casteel, the local Oklahoma Educational Association representative. Teacher later asked one of the students who discovered the material to accompany him to the dumpster, where Teacher retrieved additional material, which was pornographic in nature. Teacher found a ship-

2. The record indicates internet pornography had recently been found on District's computers, which were accessible only to certain students or District employees. We surmise Teacher wanted the material in order to identify its owner and perhaps in turn discover the identity of the person using the school computers inappropriately.

ping box, cardboard videotape covers, adult catalogs, and an invoice from a company called Back Room Sales (BRS). The name on the invoice had been removed, but an invoice number was readable. Teacher stated he took the material home that night, and brought it to school the next day and gave it to Mrs. Casteel. Approximately 10 days later, Mrs. Casteel returned the material to Teacher. Teacher then called BRS to inquire to whom the adult material had been shipped. A BRS telephone operator allegedly told Teacher the material had been shipped to Principal, at a Ponca City post office box number. Teacher thereafter told Mrs. Casteel and a third party that, according to BRS, Principal had ordered and presumably discarded the material on school grounds.

¶4 Superintendent Shiever (Superintendent) testified that between May 4 and May 7, 1999, Mrs. Casteel brought the material to his office. Mrs. Casteel told Superintendent that Teacher had told her that Principal had ordered the material. Superintendent spoke with Teacher, who relayed the substance of his telephone call with BRS to Superintendent, who then asked Teacher for a written statement. Teacher provided a written, undated statement several days later.

¶5 Superintendent had a third meeting with Teacher on May 21, during which Teacher again repeated what he had learned from BRS, and stated that he had shared this information with two other persons.

¶6 On May 24, 1999, Superintendent talked to A.S., a fellow District-employed administrator about the ongoing pornography investigation. A.S. asked to see the material and, after viewing it, voluntarily admitted to Superintendent that the material had been purchased by him. A.S., a contract employee [3] who lived on school grounds and was directed to use the school dumpsters for his personal refuse, admitted that he had ordered the material from BRS for personal

use, and had put the material in a trash bag and then discarded it in the school dumpster.

¶7 It is unclear from Superintendent's testimony, or indeed from this record, whether or not Superintendent ever told Teacher that A.S. had admitted purchasing the material. Instead, we infer that Superintendent concluded Teacher either had not spoken to BRS as he claimed, or had been given correct information from BRS but nevertheless chose to name Principal as the owner of the pornographic material in retaliation for Principal requiring Teacher to submit a plan of action 6 months earlier. The record shows shortly thereafter Superintendent recommended that Teacher be terminated for publishing false information regarding Principal's ownership of the material. According to Principal, the rumors circulating about his alleged involvement with the material had a negative effect on his ability to administer effectively.

¶8 District, acting on Superintendent's recommendation, and believing Teacher knew the true owner but nevertheless continued the allegations against Principal, recommended that Teacher be terminated from his job. District conducted a meeting and terminated Teacher for moral turpitude.[4]

¶9 Teacher appealed to the district court which, exercising its appellate review powers, conducted a de novo review, pursuant to 70 O.S.1991, § 6–101.27. The district court concluded District had failed to prove Teacher was guilty of moral turpitude and ordered District to reinstate Teacher. District appeals.

*Standard of Review*

¶10 We have reviewed the evidence presented, and find it supports the trial court's findings of fact, used as the basis for its conclusions of law and judgment. In jury-waived civil actions the trial court's findings of fact have the force and effect of a

---

**3.** District continued to honor its contract with A.S. even after his admission. A.S. subsequently resigned his position for reasons unclear from this record.

**4.** Title 70 O.S. Supp.1999, § 6–101.22. Grounds for dismissal or nonreemployment:

A. Subject to the provisions of the Teacher Due Process Act of 1990, [70 O.S.1991, § 6–101.20 through 6–101.30] a career teacher may be dismissed or not reemployed for:

. . . .

7. Any reason involving moral turpitude.

jury's verdict. When such a finding is general, it is a finding of every specific thing necessary to sustain a general judgment and such judgment will not be disturbed on appeal in the absence of legal errors, if there is *any* competent evidence reasonably tending to support the trial court's conclusion. *American Fertilizer Specialists, Inc. v. Wood,* 1981 OK 116, 635 P.2d 592. Thus, we do not reweigh the trial court's findings of evidentiary matters, *Magnolia Pipe Line Co. v. Cowen,* 1970 OK 223, 477 P.2d 848, again, because a verdict rendered in a non-jury trial is accorded the same deference as that of a jury, *United Engines Inc. v. McConnell Constr. Inc.,* 1980 OK 139, 641 P.2d 1101. Even though the evidence may conflict, the appellate court is bound by the fact finder's assessment of it, absent legal error. A verdict which is supported by conflicting but competent evidence will not be disturbed on appeal. *Mitchell v. Ford Motor Credit Co.,* 1984 OK 18, 688 P.2d 42.

### Issues

### Moral Turpitude

¶ 11 District contends Teacher was terminated from his career position for two specific acts of moral turpitude: first, for involving minors in the search for the pornographic material in the school dumpster and, second, for believing—and for publishing his belief—that Principal was the purchaser of the pornographic material, despite exculpatory evidence.

■ ¶ 12 We disregard the first purported act. District never raised the involvement of minors as a basis for Teacher's termination. District raises the issue for the first time on appeal. Teacher's involvement of minors in the search for pornographic material was not specified as a ground for termination in District's June 7, 1999, Recommendation for Dismissal, its June 8, 1999, Notice of Hearing given to Teacher, its September 17, 1999,

trial brief, or its September 21, 1999, proposed findings of fact. While we note District recited the students' involvement in its statement of background facts accompanying Teacher's notice of dismissal, we find that Teacher was not terminated on that basis. The first time District alleged the involvement of the students in the dumpster search for the pornographic material to be an additional basis for the termination is found in District's appellate brief in chief. We therefore decline to review it. *See* 12 O.S.1991, § 992, and *Arkansas Louisiana Gas Co. v. Cable,* 1978 OK 133, 585 P.2d 1113.

■ ¶ 13 Instead, we address the second alleged act of moral turpitude leading to Teacher's termination. District deemed Teacher guilty of moral turpitude because Teacher allegedly knew the statements he was making about Principal's alleged purchase and disposal of the pornographic material were false, yet he continued to publish those statements to third parties. We find the trial court correctly concluded District failed to establish Teacher was guilty of moral turpitude and we therefore affirm the trial court's decision to reinstate Teacher.

¶ 14 Reviewing the evidence in the light most favorable to District, we find District presented evidence suggesting that the pornographic material was purchased by A.S., and not by Principal;[5] that Teacher was probably given erroneous information from BRS that Principal purchased the material;[6] and that Teacher, believing the erroneous information to be accurate, published that belief to third parties, to the detriment of Principal.

¶ 15 What District failed to prove was that Teacher knowingly published false information about Principal. District argues Teacher's district court testimony, *i.e.,* that Teacher "knows" Principal ordered the material, is

5. A.S. confessed to purchasing the material, and a corporate officer of BRS testified by deposition that A.S. was the purchaser. The BRS officer also admitted his telephone operators could have given out erroneous information.

6. Teacher and two newspaper reporters were prepared to testify that they each called BRS independently and that each was told Principal was the purchaser. Teacher and one reporter did so testify at trial. The testimony of the other reporter was deemed cumulative by the trial court.

sufficient evidence of moral turpitude to justify the termination.[7] We disagree.

¶ 16 First, Teacher was not terminated for what he stated in district court but what he stated to Superintendent and third parties months earlier. Second, Teacher's district court testimony—that he still believed Principal to be the owner of the material—cannot arguably be the basis for termination because the act of moral turpitude for which Teacher was terminated was not Teacher's belief, but his publication of that belief after allegedly knowing it was based on erroneous information. In any event, district court testimony is a privileged communication pursuant to 12 O.S.1991, § 1443.1. Third, District has failed to show when Teacher was made aware of the exculpatory evidence regarding ownership of the material.

¶ 17 The fact that Teacher labored under the erroneous information that Principal purchased the material and published that information is insufficient to support Teacher's termination. District did not prove that Teacher was presented with the exculpatory confession of A.S. or other similar evidence, and was therefore on notice that Teacher's earlier belief was now either discredited or otherwise suspect, yet continued to publish that suspect information to the detriment of Principal. District makes much in its brief that Teacher still "knows" Principal purchased the material. However, it totally failed to prove that Teacher was still publishing that "knowledge" to third parties.

■ ¶ 18 Stripped of its rhetoric, District seeks to terminate Teacher's position because Teacher holds a different belief than does District concerning the ownership of the pornographic material. District has failed to prove how a person's belief, no matter how deluded or mistaken it may be, can be grounds for termination for moral turpitude. The right to maintain erroneous or unpopular beliefs is sacrosanct. District failed to prove Teacher continued to knowingly publish demonstrably false information about Principal.

¶ 19 We find no trial court error.

### Admission of Hearsay

■ ¶ 20 The standard of review for evidentiary rulings of the trial court is addressed to the sound discretion of the trial court, and this court will not disturb such ruling in the absence of a showing of abuse of discretion; there must be a strong showing of prejudice to the proponent of the evidence, or a breach of his fundamental rights. Additionally, the appellate court will indulge in the presumption that the ruling of the trial court is correct. *Chandler v. Denton,* 1987 OK 38, 741 P.2d 855; *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.,* 1982 OK 72, 650 P.2d 857; *Gray v. Gray,* 1969 OK 125, 459 P.2d 181; *Byrd v. McKoy,* 1938 OK 429, 81 P.2d 315, 183 Okla. 209.

■ ¶ 21 District complains the trial court erred when it admitted into evidence certain alleged hearsay testimony. Specifically, Teacher sponsored Eby Rexwinkle, a reporter for the *Perry Daily Journal,* to testify. Rexwinkle testified that she received a BRS shipping invoice from an anonymous source. Rexwinkle called the telephone number on the invoice, asked about the invoice number, and was allegedly told the purchaser was "Randall Robinson," (Principal) whom she did not know. District objected to this testimony as hearsay. The trial court overruled the objection, stating:

> For the record, I'm receiving this offer of proof not for the truth of the matter asserted by the person that she was speaking to but merely because it has relevance because it was said and what she heard. For that reason it is not hearsay and you may proceed.

¶ 22 Teacher contends the truth of the matter being asserted was that Principal was the purchaser of the pornography, and therefore Rexwinkle's testimony was not hearsay. District contends the truth of the matter

---

7. The focus of District's argument centers on the following district court testimony:

> Q. Mr. Hawzipta, you sit here today under oath and you testify that you believe it's Randy Robinson that ordered those materials.
> A. I know so.

being asserted was that BRS's telephone operators were giving out false information, and therefore Rexwinkle's testimony was hearsay.

¶ 23 We disagree with both Teacher and District, and note the trial court correctly perceived the true nature of Rexwinkle's testimony. Rexwinkle called BRS with an invoice number and learned the name of the person associated with that invoice number. Thus, Rexwinkle's testimony was received by the trial court not to prove Principal was BRS's customer, nor to prove BRS's employees were giving out incorrect information, but only to prove the circumstances and content of Rexwinkle's telephone call to BRS. Assuming arugendo the trial court incorrectly permitted the testimony, we find, in light of the rest of the evidence, and more specifically in light of District's failure of proof, that no reversible error occurred.

### Attorney's Fee

#### Trial–Related Attorney's Fee

¶ 24 Title 70 O.S.1991, § 6–101.27(D), states in relevant part:

> In addition, the court may enter an order awarding the prevailing party attorneys fees and costs.

¶ 25 Teacher filed a timely application seeking the award of his attorney's fee and costs. District does not dispute the reasonableness of the fee, or the amount thereof, merely its imposition.

¶ 26 Whether a party is entitled to a statutory attorney's fee is a legal question, and will be reviewed de novo by this court. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, 859 P.2d 1081. The standard of review is whether the trial court made a clearly erroneous conclusion and judgment, against reason and evidence, and thus abused its discretion in granting the attorney's fee award. *Broadwater v. Courtney,* 1991 OK 39, 809 P.2d 1310. If such an award is proper, the amount thereof is discretionary with the trial court and will not be disturbed absent an abuse of discretion. *SCS/Compute, Inc. v. Meredith,* 1993 OK CIV APP 124, 864 P.2d 1292; *State ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, 598 P.2d 659.

¶ 27 We find no abuse of discretion. The trial court's order awarding a trial-related attorney's fee is affirmed.

### Conclusion

¶ 28 Reviewing the record as a whole, we find the trial court correctly concluded District failed to prove Teacher committed an act of moral turpitude sufficient to merit his termination as a career teacher and did not abuse its discretion in awarding Teacher his attorney's fee and costs as the prevailing party. The trial court's September 22, 1999, order reinstating Teacher is affirmed.

¶ 29 AFFIRMED.

¶ 30 STUBBLEFIELD, J., and REIF, J., concur.