2007 OK 61

Rocky WESTON, Plaintiff/Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. 35 OF CHEROKEE COUNTY, Oklahoma, a/k/a Tahlequah Public Schools, Paul Hurst, individually and in his official capacity as superintendent, and Louis White, Pat Allen, Tony Boyle, John Coons, and John Day, individually and as members of the Tahlequah Public Schools Board of Education, Defendants/Appellants.

No. 102,246.

Supreme Court of Oklahoma.

July 3, 2007.

540

Richard O'Carroll, O'Carroll & O'Carroll, Tulsa, OK, for Appellee.

Karen L. Long, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, OK, for Appellants.

HARGRAVE, J.

¶ 1 The school board of Tahlequah Public Schools dismissed career teacher Rocky Weston on grounds of instructional ineffectiveness and unsatisfactory teaching performance under the Teacher Due Process Act of 1990, 70 O.S. § 6–101.20, et seq. Weston sought a trial de novo under the Act and, after hearing the evidence, the district court of Cherokee County, Judge David Nelson, ordered Weston reinstated to his position. School District appealed and the Court of Civil Appeals reversed. We previously granted teacher's petition for certiorari and now vacate the opinion of the Court of Civil Appeals and affirm the trial court.

¶ 2 Rocky Weston was a fifth-grade teacher of math, science and social studies at Central Elementary School in Tahlequah, and had been so employed since August 2001. Mr. Weston also was a tutor for the after-school program at Central Elementary. He

has been a teacher since 1993 and is state-certified to teach kindergarten through eighth grade, with endorsements in language arts, social studies and science. In 1995, Mr. Weston was selected as one of the top-five teachers in Northwest Arkansas and Northeast Oklahoma by Channel 5 in Ft. Smith, Arkansas.

¶ 3 During all but his last semester at Central Elementary, Mr. Weston received all ratings of "1" on his twice-yearly teacher evaluations. The rating of "1" means "meets criteria/satisfactory." In October 2003, Mr. Weston was approached by the elementary school principal, Gary Goodwin, for a meeting. Mr. Goodwin testified that he told Weston at the start of the meeting that "my goal was to make him a better teacher ..." He told Weston that he had looked at his previous test scores and had some concerns. Mr. Weston testified that prior to that meeting he'd had no indication that anything was amiss, nor had he received any complaints from parents or students. He testified that the principal told him that he was concerned about a test score, but that he was not shown the test scores nor were test scores discussed. The principal specifically stated that he was not telling Weston that he was not doing his job.

¶ 4 The principal subsequently provided suggestions for Mr. Weston to improve his teaching by using a particular methodology called "Teaching for Internalization." This was a teaching model that had been demonstrated to the principal by the assistant superintendent of schools and it involves stating objectives, reviewing learned material, involving the learners, restating the objectives, relating the lesson's relevance to past learning and students' experiences and then summarizing.[1] The principal opined that it would be very successful for any teacher to follow.

¶ 5 Mr. Weston was given another written evaluation in November 2003 and receiving all "1" ratings. On February 11, 2004, Mr. Weston was given a written "Improvement Plan." This was a statement of the Teaching for Internalization method of instruction to be used by Weston and also required him to:

—Observe three teachers chosen and report back to administrative staff orally and provide a written summary of observed components you plan to implement in you (sic) teaching assignment.

—Attend the professional development provided and report back to the administration orally and in writing what you learned and what components you will implement in your classroom.

—Read the book *What Great Teachers Do Differently* by Todd Whitaker and write a summary of what you learned from the book that will be implemented in your teaching assignment.[2]

¶ 6 Mr. Weston did observe three teachers, attended personal development workshops in math, read the Whitaker book, and filed a written report with the administration.[3] Weston did not state in the report how he planned to incorporate these things in his classroom. Mr. Goodwin and vice-principal Tanya Jones continued to monitor Mr. Weston's classes frequently and a written evaluation was done on March 24, 2004. Although Mr. Weston received "1" ratings in many areas, Mr. Goodwin recommended to the superintendent of schools that Mr. Weston not be rehired.[4] The superintendent, Mr. Hurst, felt that not enough time had been given, so he granted an extension until May 12, 2004.[5]

1. Defendants' Exhibit 12.

2. Defendants' Exhibit 13.

3. Defendants' Exhibit 16.

4. On the evaluation signed March 24, 2004 form Mr. Weston received all "1" ratings for "Management," as in previous evaluations. Under "Methods of Instruction," Mr. Weston received ratings of "1" and "2" (2 means Does Not Meet Criteria/Needs improvement). Under "Products" Mr. Weston received three "1" ratings and one "2" rating. Under "Professional Responsi-

bilities" Mr. Weston received all "1" ratings, including adhering to school rules, regulations and policies and demonstrating dependability and punctuality in carrying out duties and responsibilities of the position, approaches the job and tasks in a positive manner, and participates in ongoing professional development training. Def. Exh. 17.

5. By this date, Mr. Weston had been automatically rehired for the next year.

542 On May 12, 2004, Principal Goodwin's report stated that "efforts were not successful in achieving desired improvement." On May 13, 2004, the principal wrote a letter to the superintendent recommending that Weston be dismissed.

¶7 Superintendent Hurst recommended to the school board that Mr. Weston be dismissed. The School Board dismissed Weston on the grounds of unsatisfactory teaching performance and instructional ineffectiveness. Weston was advised of his right to a trial de novo in district court. Mr. Weston petitioned for a trial de novo under the Act, 70 O.S. § 6–101.27.

■ ¶8 The Teacher Due Process Act of 1990, 70 O.S. § 6–101.20 et seq. provides that at the trial de novo, the burden of proof is on the superintendent or designate to establish de novo that the teacher's dismissal is warranted. The standard of proof shall be by the preponderance of the evidence and no deference shall be given to the School Board's findings of fact or conclusions of law.[6]

## TRIAL JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

¶9 The trial judge stated his findings of fact and conclusions of law from the bench at the end of the trial and they were transcribed. The journal entry of judgment did not set out the findings of fact and conclusions of law. Though neither party had objected, on appeal school district argued that the trial court's order of reinstatement could not be upheld because the trial court did not make written findings of fact and conclusions of law as required by 70 O.S. § 6–101.27(D).[7] Appellee responded that the appellants had signed the journal entry without objection.

¶10 The Court of Civil Appeals determined that the interests of justice would not be served by reversing the case for failure to have a proper journal entry so they returned the matter to the trial court with directions to enter findings of fact and conclusions of law. Upon receipt of that order, the trial judge directed the parties to file proposed findings of fact and conclusions of law. A Journal Entry of Judgment with written findings of fact and conclusions of law was filed.

■ ¶11 The Teacher Due Process Act provides that the trial judge shall make written findings of fact and conclusions of law. It is the responsibility of the parties to object or take exception to a deficient journal entry in order to raise it as error on appeal. Here, the trial judge substantially complied with the statute by stating his findings and conclusions into the record. The Court of Civil Appeals acted within its authority to return the case to the trial court with directions to set out findings of fact and conclusions of law in the journal entry. See, Allied Investment Co. v. Oklahoma Securities Comm., 451 P.2d 952 (Okla.1969) (under the Administrative Procedures Act, case was remanded to commission with directions to set forth findings of fact and conclusions of law in their order of revocation or else vacate the order.)

¶12 The trial judge found that Mr. Weston is a career teacher who had received satisfactory evaluations until February 2004 and that the criticism against him was that the principal and vice-principal wanted him to teach using the Teaching by Internalization method. The trial judge determined that Weston had complied with the improvement plan except that "what Weston had failed to do was report to the administration what he was going to use in his classroom, but that there was testimony that he did in fact use some of

---

6. Prior to adoption of the Teacher Due Process Act in 1990, the decision of the Board of Education was reviewed by the district court pursuant to the Administrative Procedure Act, 75 O.S. § 312, and the standard of review was "clearly erroneous." See, Childers v. Independent School Dist. No. 1, Bryan County, Okla., 1981 OK 123, 645 P.2d 992.

7. 70 O.S. § 6–101.27(D) provides, in pertinent part:

"... Within three (3) days following the conclusion of the trial de novo, the judge shall prepare written findings of fact and conclusions of law and shall enter judgment directing either of the following: 1) That the local board of education reinstate the career teacher with full employment status and benefits; or 2) That the decision of the local board of education for the dismissal or nonreemployment of the career teacher be sustained...."

those things." The trial judge found that Mr. Weston was in substantial compliance with the requirements of the plan of improvement.

¶ 13 The trial judge also considered the results of the standardized tests to be significant, while at the same time observing that there will be a wide range of student abilities in a particular classroom. The trial judge stated that he looked very carefully at the test scores for other fifth grade teachers and compared how Mr. Weston's kids were doing compared to other kids in the school. The trial judge found that test scores for the same grade taught by different teachers at the school revealed some grades higher than Weston's and some grades lower that Weston's classes, and that the administration had not taken action against teachers whose classes tested lower than Weston's.

¶ 14 On appeal, school district argued that the trial court's decision should be reversed as unsupported by any competent evidence because the evidence established that Weston failed to comply with *all* of the requirements of his improvement plan and because Weston failed to present any competent evidence showing that he had complied with all of the requirements of his improvement plan. The Court of Civil Appeals reversed. The Court of Civil Appeals rejected the trial judge's findings, weighed the evidence and made its own findings of fact and conclusions of law.

¶ 15 We granted teacher's petition for writ of certiorari. The sole issue on appeal is whether there is any competent evidence to support the trial judge's ruling that the school district had failed to prove by a preponderance of the evidence that teacher should be fired for institutional ineffectiveness or unsatisfactory teaching performance. Although the Court of Civil Appeals recognized that the issue was not whether Weston complied or substantially complied with the plan of improvement but whether his teaching was unsatisfactory or ineffective, the Court of Civil Appeals substituted its judgment for that of the trial judge in weighing the credibility of the witnesses and the evidence to determine the preponderance thereof.

## STANDARD OF REVIEW

¶ 16 On review of a decision of the trial judge in a trial de novo under the Teacher Due Process Act, the appellate court does not weigh the evidence to determine the preponderance thereof. *See, Hagen v. Independent School Dist. No. I–004 of Adair County,* 2007 OK 19, 157 P.3d 738 (mandate issued April 27, 2007). The standard before the court on appeal is whether there is any competent evidence to support the trial court's decision. *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, 818 P.2d 475. Only if that decision is without the support of competent evidence, or is clearly erroneous as a matter of law may the trial judge's findings of fact not be accepted.

¶ 17 We have said that the teacher tenure law, 70 O.S. § 6–101, et seq., was intended to give job security to competent and qualified teachers and to protect them from dismissal or non-renewal for political, personal, arbitrary or discriminatory reasons. *Babb v. Independent School District,* 1992 OK 46, 829 P.2d 973, 975. Tenure status, which is statutorily conferred upon teachers who have been in employment of the school district the required number of years, demonstrates legislative intent to grant teachers substantive rights in their continued position, which are not possessed by those in a temporary or probationary status. *Id.* Under this regime, teacher contracts are automatically renewed on a continuing basis unless a school board or a teacher acts to prevent the employment's renewal. Once attained, tenure status cannot be lost except on the grounds sanctioned by law. 829 P.2d at 976.

¶ 18 The teacher in this case was dismissed for violation of 70 O.S.2001 § 6–101.22(A)(5) and (6):

"A. Subject to the provisions of the Teacher Due Process Act of 1990,

a career teacher may be dismissed or not re-employed for:

* * *

5. *Instructional ineffectiveness;*

6. *Unsatisfactory teaching performance;*

* * *"

(emphasis added).

Proving instructional ineffectiveness and unsatisfactory teaching performance by a preponderance of the evidence is the standard under the Teacher Due Process Act. The trial judge correctly placed the burden of proof on the school district. At the outset, in October 2003, the principal told Weston that his goal was to make him a *better* teacher. The administration's complaint against Mr. Weston was that he did not use the Teaching by Internalization teaching method. The principal testified that the Teaching by Internalization method is not required of other teachers at the school. There was testimony that Weston had incorporated some of the suggestions in his classroom and his lesson plans and likewise testimony that Weston's students had been engaged in group projects, as observed by vice-principal Jones.

¶ 19 There was testimony on Mr. Weston's behalf from a number of former students and their parents. Eighteen parents and students testified, in almost one-hundred pages of testimony, praising Weston's teaching and his effectiveness as a teacher. Students testified that they were not bored in class, that they had worked on special projects and had worked in groups, etc., in contradiction to the assertions of the administration. Those parents and students who were asked why they came to testify for Mr. Weston responded, variously, that it was because he was a good teacher, they did not believe that he should have been fired and they were surprised to learn that he had been fired.[8] School District attempted to discredit their testimony because all of the students who testified made As and Bs in Mr. Weston's classes, suggesting that they were not representative. The burden, however, was on the School Board, who could have called as witnesses students or parents of students who felt adversely affected by Weston's teaching, which was one of the charges leveled at Weston.

¶ 20 The trial judge weighs the evidence and determines the credibility of witnesses and the weight to be given to their testimony. The trial judge applied the correct standard under the Teacher Due Process Act and found that the school district had failed to prove by a preponderance of the evidence that the teacher should be dismissed on the grounds of instructional ineffectiveness and unsatisfactory teacher performance. Because there was competent evidence supporting the trial judge's decision, it will be affirmed on appeal.

## ATTORNEY FEES

¶ 21 Appellants argued that it was error to award Weston attorney fees when he suffered no loss of salary or benefits before being reinstated and that he in effect received a "paid vacation." They argued that this was abuse of discretion on the part of the trial judge, citing *Hawzipta v. Independent School Dist. No. I–004*, 2000 OK CIV APP 113, 13 P.3d 98.

¶ 22 The Teacher Due Process Act provides for a career teacher to receive any compensation and benefits to which he is entitled until the teacher's case is adjudicated at the trial de novo. 70 O.S. § 6–101.26(C). The next section, 6–101.27(D), provides that the trial judge may enter an order awarding attorney fees and costs to the prevailing party. This indicates legislative intent that a teacher can be awarded both. The trial judge is presumed to be aware of these statutory provisions. We do not have a transcript of the hearing on attorney fees and we cannot say that the fact that the trial court awarded attorney fees under these circumstances constitutes an abuse of discretion.

**CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE ORDER OF THE TRIAL COURT IS AFFIRMED.**

¶ 23 CONCUR: WINCHESTER, V.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, WATT, COLBERT, JJ.

¶ 24 DISSENT: TAYLOR, J.

---

8. See, Tr. Vol. II, pp. 316, 334, 336, 350, 358–9, 366, 376, 382, 388, 400.